Cas N. UNDERWOOD,
Plaintiff/Appellant,

v.

ZURICH INSURANCE COMPANY and BASF Corporation,
Defendants/Appellees.

Supreme Court of Tennessee,
at Knoxville.

May 10, 1993.

Rebecca D. Snider–Slone, Strand & Goddard, Dandridge, for plaintiff/appellant.

G. Gerard Jabaley, Mark C. Travis, Wimberly & Lawson, Knoxville, for defendants/appellees.

## OPINION

ANDERSON, Justice.

In this worker's compensation appeal, we are asked to determine whether a post-trial increase in disability constitutes a reason justifying relief from a final judgment under Tenn.R.Civ.P. Rule 60.02(5). The trial court awarded 58 percent disability to the body as a result of work-connected injuries caused by an explosion, and thereafter commuted the award to a lump sum. Later, the employee petitioned to reopen the lump-sum judgment because Post-traumatic Stress Disorder was diagnosed after the final judgment and that constituted grounds to reopen under Tenn.R.Civ.P. 60.-02(5) ("any other reason justifying relief"). The trial court concluded that the judgment could not be modified because Tenn.Code Ann. § 50–6–231 (1991) only allows reopening for increased disability when the award is "payable periodically for more than six (6) months." We affirm the trial court judgment for the reasons stated below.

### BACKGROUND

On April 29, 1989, the plaintiff, Cas Underwood, was operating a tow motor in the course of his employment with the defendant, BASF Corporation ("BASF"), when an explosion occurred, throwing him from the machine and injuring his right foot, shoulder, and back. After four months, Underwood had recovered sufficiently to return to work, but fractured his foot in another work-related injury in December of

1989. A dispute arose over the extent of Underwood's disability from the injuries. It was resolved by the trial court's award on January 4, 1991, of 58 percent disability to the body as a whole. Shortly thereafter, the award was commuted to a lump sum at Underwood's request, and the defendant, Zurich Insurance Company ("Zurich"), paid the award in full in the amount of $53,592.00. The trial court judgment provided that the lump-sum award related "... to any disability resulting or to result from said injuries...." The judgment also awarded all "reasonable and necessary future medical expenses ... by reason of said accidents."

Approximately nine months later, Underwood petitioned to reopen the final judgment, alleging that he had developed Post-traumatic Stress Disorder ("PTSD") "as a direct and proximate result" of the explosion. Additional medical and permanent disability benefits were sought. In support of the petition, Underwood's affidavit stated that he began having nightmares about the explosion sometime during the spring of 1991. He complained of the nightmares and depression to a Sevierville orthopedic surgeon, who referred him to Dr. Max Overton, a clinical psychologist. On July 2, 1991, Dr. Overton diagnosed Underwood as suffering from PTSD, caused by the explosion. Underwood said he first realized and understood the connection between his mental condition and the work-related accident when he talked with Dr. Overton in July of 1991. Immediately thereafter, he contacted BASF and requested that his medical bills be paid by workers' compensation.

After this action was instituted, BASF designated a panel of three physicians, and Underwood selected Dr. John Marshall and went to him for a psychiatric examination on January 16, 1992, after which Dr. Marshall diagnosed PTSD and major depression. Dr. Marshall's medical report stated that the symptoms were "subtle in onset and probably began shortly after the first injury, when he [Underwood] began to have trouble sleeping." The medical history contains statements made by Underwood's wife and son indicating that the symptoms grew progressively worse from the time of his injury until he was diagnosed by Dr. Overton.

Based on the foregoing, the trial judge found that he no longer had jurisdiction to modify the award and dismissed Underwood's petition to reopen. The judge relied on Tenn.Code Ann. § 50–6–231 (1991), which provides in pertinent part:

All amounts paid by employer and received by the employee or the employee's dependents, *by lump sum payments, shall be final,* but the amount of any award payable periodically for more than six (6) months may be modified as follows: (1) At any time by agreement of the parties and approval by the court; or (2) If the parties cannot agree, then at any time after six (6) months from the date of the award an application may be made to the courts by either party, on *the ground of increase or decrease of incapacity* due solely to the injury.

(Emphasis added.) The trial court granted the motion for medical expenses for the Post-traumatic Stress Disorder, because the original final judgment awarded future medical expenses, the causation evidence was undisputed, and Underwood notified BASF as soon as he knew, or should have known, of his condition. Both parties have appealed.

### RULE 60.02 GROUNDS

On appeal, Underwood argues that the language of Tenn.Code Ann. § 50–6–231 (1991) does not control the result here, and that the trial court erred in failing to set aside the lump-sum judgment under the catch-all ground of Tenn.R.Civ.P. 60.02(5), "any other reason justifying relief from the operation of the judgment." The entire rule provides:

**Rule 60.02. Mistakes—Inadvertence—Excusable Neglect—Fraud, etc.**—On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or ex-

trinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1) and (2) not more than one year after the judgment, order or proceeding was entered or taken....

Tenn.R.Civ.P. 60.02.

■ A motion for relief based on Rule 60.02 grounds addresses itself to the sound discretion of the trial judge. The scope of review of an appellate court is to determine if the discretion was abused. *Banks v. Dement Const. Co. Inc.*, 817 S.W.2d 16, 18 (Tenn.1991); *Toney v. Mueller Co.*, 810 S.W.2d 145, 146 (Tenn.1991).

■ The language of Tenn.R.Civ.P. 60.-02(5) is open-ended and leaves to the courts the task of interpretation. Tennessee has chosen to construe the rule narrowly. It is to be invoked only in cases of overwhelming importance, or those involving extraordinary circumstances or extreme hardship. *See Banks, supra*, 817 S.W.2d at 18; *Brown v. Consolidated Coal Co.*, 518 S.W.2d 234 (Tenn.1974).

There is only one reported workers' compensation case in Tennessee, *Brown v. Consolidation Coal Co., supra*, where relief has been granted under Rule 60.02(5). In that case, a mistake was made in the final judgment as to the applicable compensation rate. The *Brown* court held that

... the award of the correct workmen's compensation rates applicable to any given suit under said Act is of such overriding importance to employer and employee alike, that, in those cases where there is no dispute as to the date controlling the compensation rates, authority is vested by Rule 60.02(5) for the correction of error therein....

*Id.* at 238.

This Court has, however, permitted the modification of a workers' compensation judgment on Rule 60.02(1) grounds of mistake. In *Corby v. Matthews*, 541 S.W.2d 789 (Tenn.1976), the trial court awarded 10 percent to the right arm; however, after the judgment, further surgery was required and the worker could not return to his employment. We allowed relief, based on a physician's mistake, as to the existing disability at the time of trial. However, Justice Brock carefully pointed out that "a mistake in estimating the extent to which an employee's disability may increase in the future may have no effect upon the validity of a consent decree approving a lump-sum settlement agreement." *Id.* at 795. He also observed that

... by entering into lump-sum settlements both parties run a risk of injury. The employee runs the risk that his disability may increase in the future and the employer runs the risk that the disability of the employee may decrease in the future, but both parties are bound and foreclosed by the entry of a valid decree approving a lump-sum settlement.

*Id.* at 793.

More recently, Rule 60.02 relief has been denied by this Court in workers' compensation cases for later-arising medical conditions resulting in increased disability.

First, in *Toney v. Mueller Co.*, 810 S.W.2d 145 (Tenn.1991), we considered whether Rule 60.02 (mistake) grounds were available to set aside a final judgment where there was a later increase in disability. We pointed out there was no mistake of fact as to the extent of disability at the time of the original judgment and, therefore, there was no mistake within the meaning of Rule 60.02. We observed that

Rule 60.02 is not meant to be used in every case in which the circumstances of a party change after the entry of a judgment or order. Nor is the rule a mechanism for use by a party who is merely dissatisfied with the result of a particular case. Rule 60.02 is meant to be used only in those few cases that meet one or more of the criteria stated. As recently stated by this Court, 'Rule 60.02 acts as an escape valve from possible inequity

that might otherwise arise from the unrelenting imposition of the principle of finality imbedded in our procedural rules.' Because of the importance of this 'principle of finality,' the 'escape valve' should not be easily opened.

*Id.* at 146 (citations omitted).

Again, in *Nails v. Aetna Ins. Co.*, 834 S.W.2d 289 (Tenn.1992), we refused to allow relief under Rule 60.02(5) from a lump-sum judgment where, after judgment, the disability increased and additional surgery was required. Here, we pointed out that the relief provided under Rule 60.02(5) is an exceptional remedy, and that its application requires an extraordinary circumstance or extreme hardship.

Finally, in *Banks v. Dement Const. Co.*, 817 S.W.2d 16 (Tenn.1991), we refused to grant relief from the statute of limitations under Rule 60.02(5) where the case was dismissed because of failure to file a timely answer. We cited with approval language from our intermediate court that "Tennessee has recognized only two applications of Rule 60.02(5)—one limited to certain workers' compensation cases and the other derived from federal law in cases of extraordinary circumstances or extreme hardship." *Id.* at 18, quoting *Gaines v. Gaines*, 599 S.W.2d 561, 564 (Tenn.App.1980); and *Tyler v. Tyler*, 671 S.W.2d 492, 495 (Tenn. App.1984). We also pointed out that the broad power granted by Rule 60.02(5) is not to be used to relieve a party from free, calculated and deliberate choices he has made. *See Cain v. Macklin*, 663 S.W.2d 794, 796 (Tenn.1984), quoting with approval 11 Wright & Miller, *Federal Practice & Procedure* § 2864 (1973).

Some state courts, with statutes similar to the Tennessee statute, have denied petitions to reopen lump-sum awards on the grounds of later-arising disability. *See e.g., Boles v. Hooper & McDonald, Inc.*, 424 So.2d 634 (Ala.Civ.App.1982); *Johnson v. St. John's Mercy Medical Ctr.*, 812 S.W.2d 845 (Mo.Ct.App.1991); *Luersen v. Transamerica Ins. Co.*, 550 S.W.2d 171 (Tex.Civ.App.1977).

Other state courts have permitted modification of worker's compensation awards where a later disability, either physical or mental, arises. *See* 3 A. Larson, *Workmen's Compensation Law* § 81.33 (1971 & Supp.1992); *Cote v. Osteopathic Hosp. of Maine, Inc.*, 447 A.2d 75 (Me.1982); *Bare v. State Comp. Director*, 148 W.Va. 760, 137 S.E.2d 435 (1964); *Capitol Foundry v. Indus. Comm'n*, 27 Ariz.App. 79, 551 P.2d 69 (1976). In these cases, however, express statutory language allowed modification, and the result was not based on a separate rule of procedure similar to our Rule 60.02(5).

■ Moreover, the Tennessee workers' compensation statutes address directly the issue of modification for increased or decreased disability and emphasize the finality of lump-sum judgments. As set out above, Tenn.Code Ann. § 50–6–231 (1991) provides that lump-sum awards are final, and modification for increased disability is proper only if the award is payable periodically for more than six months. Thus, while Rule 60 grounds may be used to set aside final workers' compensation judgments in narrow circumstances, courts determining the issue must consider that the balance in workers' compensation cases involving lump-sum awards is weighted in favor of finality.

Here, Underwood seeks to set the final lump-sum judgment aside and reopen the proof to establish an increase in disability, despite the specific provisions of Tenn.Code Ann. § 50–6–231 that lump-sum awards are final, and in spite of the wording of the final judgment, which provided that the lump-sum disability award covered "any disability resulting *or to result.*" (Emphasis added.)

Lump-sum judgments do represent a risk to both parties. "The employee runs the risk that his disability may increase in the future and the employer runs the risk that the disability of the employee may decrease...." *Corby*, 541 S.W.2d at 793. The employee here assumed the risk of a future increase in disability in exchange for a commuted lump-sum, which is relatively larger than periodic weekly payments. For example, the lump sum of $53,592.00 is

$8,570.00 [1] more than if it had been received in periodic payments over 232 weeks. Rule 60.02(5) is not an avenue to relieve a party from free, calculated, and deliberate choices. *Cain,* 663 S.W.2d at 796.

We, therefore, conclude that the trial court was correct in dismissing the petition to modify the judgment, because the specific language of our workers' compensation statute requires finality of lump-sum judgments and prevents modification, and because the factual circumstances here do not present a case of overriding importance, or extraordinary circumstances or extreme hardship within the meaning of Rule 60.02(5).

### MEDICAL EXPENSES

Zurich contends on appeal that the trial court erred in finding that Underwood gave notice of his PTSD condition and need for medical care as soon as he knew or should have known of the problem. Relying on statements made by Underwood's wife and son to Dr. Marshall, Zurich argues that Underwood should have known of his condition before the entry of the final judgment in the initial action, and therefore, the claim for medical expenses is barred by his failure to give timely notice of his need for medical treatment. *See* Tenn.Code Ann. § 50–6–201 (1991).

The judgment in the initial action awarded the plaintiff all "reasonable and necessary future medical expenses ... by reason of said accidents." There is no dispute as to causation. All the medical experts agree that the PTSD condition was caused by the explosion. The only dispute is timely notice.

In the recent case of *Livingston v. Shelby Williams Indus.,* 811 S.W.2d 511 (Tenn. 1991), this Court held that the employee's failure to give notice was reasonable and excused where the employee's symptoms did not indicate the severity of the injury, where there was a gradual progression of symptoms over a period of several months, and where the employee was not advised that the back condition could have been caused by the work-related trauma until a year after the injury. *See also CNA Ins. Co. v. Transou,* 614 S.W.2d 335 (Tenn.1981) (notice reasonable where employee was not informed by a physician that he had an injury until four or five months after the accident).

Here, according to Dr. Marshall's medical report, Underwood's symptoms of PTSD were "subtle in onset" and grew progressively worse. Moreover, Underwood stated that he was unaware of any connection between his mental condition and the work-related accident until he saw Dr. Overton in July of 1991. It is undisputed that immediately after learning of his condition and its relation to the work-related injury, Underwood contacted both BASF and Zurich requesting worker's compensation coverage of the medical expenses.

Based on the foregoing, we agree with the trial court that Underwood gave notice as soon as he knew, or should have known, of his condition and its connection to the work-related explosion, and that the notice was reasonable and timely.

### CONCLUSION

Accordingly, the trial court judgment dismissing Underwood's petition to reopen the final lump-sum judgment, and granting his motion for medical expenses is affirmed. The case is remanded for proceedings consistent with this Opinion. The costs of this appeal are taxed one-half against the plaintiff and one-half against the defendants.

REID, C.J., and DROWOTA, O'BRIEN and DAUGHTREY, JJ., concur.

---

1. Calculation based upon an 8 percent discount factor applicable at time of trial.