IN THE COURT OF APPEALS
AT KNOXVILLE

**FILED**

**February 3, 1999**

**Cecil Crowson, Jr.**
**Appellate Court**
**Clerk**

| | | |
|---|---|---|
| LINDA CHANEY | ) | HAMILTON COUNTY |
| | ) | 03A01-9803-JV-00107 |
| Plaintiff-Appellee | ) | |
| | ) | |
| | ) | |
| v. | ) | HON. SUZANNE BAILEY, |
| | ) | JUDGE |
| | ) | |
| ROBERT DICKINSON | ) | |
| | ) | |
| Defendant-Appellant | ) | REVERSED AND REMANDED |

LISA M. MACK OF CHATTANOOGA FOR APPELLANT

JOHN KNOX WALKUP, Attorney General & Reporter, and TAMMY L.
KENNEDY, Assistant Attorney General, OF NASHVILLE, FOR APPELLEE

O P I N I O N

Goddard, P.J.

Robert Lee Dickinson, Jr., appeals the ruling of the
Juvenile Court of Hamilton County, Tennessee at Chattanooga,
insisting that the Juvenile Court erred in its determination of
Mr. Dickinson's Tennessee Rules of Civil Procedure 60.02 motion
for relief from child support payments based upon evidence that
he is not the father of the child he has been supporting.  The
Juvenile Court ruled that Mr. Dickinson's motion was barred by
res judicata; therefore, Mr. Dickinson is still obligated to pay
current and past due child support payments.

I. Facts:

On June 17, 1982, Ms. Linda Faye Sluder[1] (Chaney) gave birth out of wedlock to a child named Carmon Miranda Sluder. Ms. Chaney filed a petition to establish paternity on August 3, 1982, and in it she named Mr. Dickinson as the biological father. From the record it appears that Ms. Chaney and Mr. Dickinson had gone on several dates together; yet, at trial Mr. Dickinson denied that there had ever been sexual contact between the two. Additionally, Mr. Dickinson and his father, Mr. Dickinson, Sr., both offered testimony that Mr. Dickinson was impotent at the time he and Ms. Chaney had dated.

At trial Mr. Dickinson requested the opportunity to obtain a blood test to determine parentage. The court granted this request. At that time, however, it was the practice of the courts to make the requesting party pay for the blood test; therefore, the court ordered Mr. Dickinson to pay the $400 fee for the test on March 22, 1983. Mr. Dickinson claimed he could not afford the $400 test and so it was never obtained by either party.

Despite his denials of parentage, on September 12, 1983, the Juvenile Court entered an order adjudging Carmon Miranda Sluder to be the child of Mr. Dickinson. The court also ordered Miranda Sluder's surname changed to Dickinson. Child support payments were set at $15 per week. Mr. Dickinson did not appeal the ruling of the Juvenile Court.

---

[1]It is not clear from the record when Ms. Sluder changed her last name to Chaney; nor is it clear if she is presently married.

In 1993, almost ten years after the Juvenile Court's Order, Mr. Dickinson decided to pursue the blood testing he could not afford at the time of trial. Both Ms. Chaney and Miranda consented to the testing. The paternity test results concluded that Mr. Dickinson was not the biological father of Miranda. Armed with this new evidence, Mr. Dickinson filed a petition with the Court on May 17, 1994, requesting that the Juvenile Court reverse its 1983 decision.

On August 10, 1994, Mr. Dickinson filed the Rule 60.02 Motion for relief from judgment that is the subject of this appeal. In the motion, Mr. Dickinson moved the court to consider the recent blood test excluding him from parentage as grounds for relief. Specifically, Mr. Dickinson requested a judgment from the court declaring him not the father of Miranda Dickinson. Mr. Dickinson also moved for relief on grounds that he was denied due process of law under the 14th Amendments of the United States Constitution and the Tennessee Constitution because he was ordered to pay for the blood testing.[2]

The Juvenile Court Referee entered Findings and Recommendations denying Mr. Dickinson's request for relief on May 24, 1995, finding that his claim was barred by res judicata. The Juvenile Court agreed with the referee and denied Mr. Dickinson's Rule 60.02 motion on March 6, 1996, on the same basis. Subsequent to two other hearings for child support matters, Mr. Dickinson filed his notice of appeal on February 10, 1997.

---

[2]Although this legal argument may have merit, it would have been the proper subject for an appeal, not a Rule 60 Motion ten years after trial. Rule 60 was not designed to bypass the regular appeals process. Thus, in Our determination We will only consider the new evidence that he is in fact not the father.

At the time Mr. Dickinson appealed the denial of his motion, the Juvenile Court had ordered him to pay $134.33 per month in child support plus $43.33 per month for back child support owed on an arrearage of $4,634. Thus, Mr. Dickinson's present total child support payments are $177.66 per month. Currently, Mr. Dickinson is self-employed as a seller of car floor mats. His average gross income per month before taxes and business expenses is $750.

Mr. Dickinson has had a physical impairment with his right arm since he was nine years old. This arm was operated on when he was 13, but as of the last several years he has lost mobility of his fingers, elbow, and shoulder. There is testimony in the record that his right arm suffers from 70% disability. Additionally, Mr. Dickinson has had an ongoing back ailment. These physical problems have limited Mr. Dickinson in the type of work that he can perform.

II. Law

Mr. Dickinson argues that even though courts must respect the doctrine of res judicata and uphold the finality of judgments, exceptional cases do exist. The exceptional case will require a re-examination of the judgment in order to insure that justice prevails. There is support for Mr. Dickinson's argument in Tennessee Rules of Civil Procedure Rule 60.02 and in the case law that interprets the rule. In <u>Duncan v. Duncan</u>, 789 S.W.2d 557 (Tenn.Ct.App.1990), the Middle Section of the Tennessee Court of Appeals wrote:

> There is little disagreement that the traditional preference for finality brings disputes to an end and promotes judicial economy. However, as beneficial as

4

> it is, finality is relative and contextual. Our
> courts' interest in making correct decisions in each
> case dictates caution in placing errors beyond
> correction.
>
> Tenn.R.Civ.P. 60.02 itself strikes a balance
> between the competing desires for finality and for
> correctness.

Duncan, 789 S.W.2d at 562, 563 (citations omitted).

Yet, Rule 60.02 will not be available for every party. Only rare cases will merit relief under the strict requirements of Rule 60.02. The Supreme Court of Tennessee affirms this strict interpretation of Rule 60.02 in Toney v. Mueller Co., 810 S.W.2d 145 (Tenn.1991). In that case the Court wrote:

> Rule 60.02 is not meant to be used in every case in
> which the circumstances of a party change after the
> entry of a judgment or order. Nor is the rule a
> mechanism for use by a party who is merely dissatisfied
> with the result of a particular case. Rule 60.02 is
> meant to be used only in those few cases that meet one
> or more of the criteria stated. As recently stated by
> this Court, "Rule 60.02 acts as an escape valve from
> possible inequity that might otherwise arise from the
> unrelenting imposition of the principle of finality
> imbedded in our procedural rules." Thompson v.
> Firemen's Fund Ins. Co., 798 S.W.2d 235, 238
> (Tenn.1990). Because of the importance of this
> "principle of finality," the "escape valve" should not
> be easily opened.

Toney, 810 S.W.2d at 146.

A motion for relief based on Rule 60.02 grounds addresses itself to the sound discretion of the trial judge. The scope of review of an appellate court is to determine if the discretion was abused. Underwood v. Zurich Ins. Co., 854 S.W.2d 94, 97 (Tenn.1993)(citing Banks v. Dement Constr. Co., Inc., 817 S.W.2d 16, 18 (Tenn.1991); Toney v. Mueller Co., 810 S.W.2d 145, 147 (Tenn.1991)).

Rule 60.02 reads in pertinent part:

> On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; . . . (5) any other reason justifying relief from the operation of the judgment.  The motion shall be made within a reasonable time, and for reasons (1) and (2) not more than one year after the judgment, order or proceeding was entered or taken.

Because more than one year has passed between the final judgment in the case and the filing of the Rule 60.02 motion, Mr. Dickinson may not proceed under 60.02(1) or (2).  Thus, the only alternative available for Mr. Dickinson is to proceed under Rule 60.02(5).

While the language of Rule 60.02(5) is indeed open to broad interpretation, Tennessee courts have chosen in favor of a narrow interpretation of the rule.  The standards for application of Rule 60.02(5) are in fact more demanding than the other subsections of Rule 60.02.  NCNB Nat'l Bank of North Carolina v. Thrailkill, 856 S.W.2d 150, 154 (Tenn.Ct.App.1993).  Rule 60.02(5) is only to be invoked in cases of overwhelming importance, or those involving extraordinary circumstances or extreme hardship. Underwood v. Zurich Ins. Co., 854 S.W.2d 94, 97 (Tenn.1993).  Additionally, Rule 60.02(5) was not designed to relieve a party from free, calculated, and deliberate choices. NCNB, 856 S.W.2d at 154 (citing Magnavox Co. of Tennessee v. Boles & Hite Constr. Co., 583 S.W.2d 611, 613 (Tenn.Ct.App.1979)).

We believe the facts of this case warrant Mr. Dickinson relief under Rule 60.02(5). Not only is his case entirely exceptional, it is also of overwhelming importance for the courts of this state to acknowledge legally what science provides conclusively.

In <u>Johnson v. Johnson</u>, an unreported decision of the Western Section of the Court of Appeals, filed in Jackson on January 7, 1997, the Court was faced with a similar situation. The appellant in <u>Johnson</u> contested a consent order that he had signed on February 26, 1991, acknowledging himself as the father of the child in question. In 1995, paternity testing established that another man was in fact the father of the child. Despite the 4 year hiatus and the appellant's failure to obtain a blood test during the original paternity action, the Court of Appeals ruled in favor of the appellant's Rule 60.02(5) motion. In its decision the Court wrote:

> We are not persuaded by Mother's argument that some things in life simply are not fair or that Appellant is estopped to deny paternity because of his execution of the consent order. The record does not show that the appellant knew he was not this child's biological father at that time. We believe the circumstances shown here to exist are those for which Rule 60.02 was clearly designed.

<u>Johnson</u>.

We likewise agree that the circumstances of Mr. Dickinson's case are clearly those for which Rule 60.02 was designed. The factual situation in <u>Johnson</u> is different from the present case, however, the application of justice should not be. Mr. Dickinson is not the biological father of Miranda, nor has he ever maintained a relationship with her. His contact has been

7

purely of a financial nature.  Because of Mr. Dickinson's obvious physical disabilities and low monthly income, the burden of child support payments must appear enormous if not insurmountable. Because Rule 60.02(5) was developed in order to alleviate cases involving extreme hardship, see Underwood v. Zurich Ins. Co., 854 S.W.2d 94, 97 (Tenn.1993), this Court will apply Rule 60.02(5) to Mr. Dickinson's situation and grant the relief requested.

The public policy that promotes the decision in Johnson is the same one that promotes this decision today - courts should respect scientific evidence that resolves beyond doubt questions of paternity.  The Court in Johnson relied upon TCA 24-7-112 noting that "it is of overriding importance to the father, the mother, and the state, as well, that one conclusively established in law not to be the father of a child be not declared as the father of that child."  TCA 24-7-112 operates to provide a court both procedural and substantive rules during a paternity action. TCA 24-7-112(b)(1), as quoted in Johnson, mandated: "If the results of the tests and comparisons exclude the defendant as the father of the child, this evidence shall be conclusive evidence of non-paternity and the court shall dismiss the proceeding."

TCA 24-7-112(b)(1) was amended by the legislature in July 1997.  The new version reads: "If the results of the first test exclude paternity and the second test also exclude paternity, or, if the initial test results are negative on the issue of paternity establishment and no second test is requested, this shall be conclusive evidence of non-paternity and the action shall be dismissed."  TCA 24-7-112(b)(1)(B)(i).  The amendment to the statute was designed to handle the complicated situation of

8

two paternity tests that indicate different outcomes or probabilities. See TCA 24-7-112(b)(1)(B)(ii) & (iii). The facts of this case do not warrant a concern for the possibility of a different test result. Instead, the basic understanding of TCA 24-7-112 that was quoted in Johnson remains. A negative test result is conclusive evidence of non-paternity.

The General Assembly, through TCA 24-7-112, has seen fit to legislatively acknowledge the legitimacy and accuracy science provides to questions of parentage. We believe that a respect for established science is a matter of overwhelming importance to the courts of this state and thus a proper consideration in this Rule 60.02(5) motion. See Underwood v. Zurich Ins. Co., 854 S.W.2d 94, 97 (Tenn.1993). Even though Mr. Dickinson's motion does not arise during the original paternity action as required for 24-7-112 to apply, this alone should not preclude the Juvenile Court from recognizing what Mr. Dickinson, Ms. Chaney, and Miranda already know about the true nature of this case.

In the interest of justice, this Court may not turn a blind eye to the fact that Mr. Dickinson is not the father of Miranda. While it is true that res judicata promotes the finality of judgments, it should not be interpreted in a manner that sustains ludicrous legal results that fly in the face of reality.

The decision of the Juvenile Court is reversed. The case is remanded for an order granting the relief that Mr.

9

Dickinson seeks.  Costs of this appeal, as are costs below, are adjudged against Ms. Chaney.


_____
Houston M. Goddard, P.J.


CONCUR:


_____
Charles D. Susano, Jr., J.


_____
William H. Inman, Sr.J.