IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 18, 2006 Session

## STATE OF TENNESSEE, ex rel. LAKENYA L. JOHNSON v. OTHA L. MAYFIELD, JR.

**A Direct Appeal from the Juvenile Court for Shelby County
No. L6016     The Honorable George Blancett, Special Judge**

---

**No. W2005-02709-COA-R3-JV - Filed October 26, 2006**

---

Appellant challenges trial court's order setting aside the consent order acknowledging paternity and ordering no child support after July 1, 2005, based on the results of DNA tests which conclusively prove that Appellee is not the father of the child. We affirm and remand.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Juvenile Court Affirmed and Remanded**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

Paul G. Summers, Attorney General and reporter; Warren Jasper, Assistant Attorney General, for Appellant, State of Tennessee ex rel., Lakenya L. Johnson

Dewun R. Settle of Memphis, Tennessee for Appellee, Otha L. Mayfield, Jr.

**OPINION**

### I.     Factual and Procedural History

Cedrick Demond Mayfield (the "child," "Cedric") was born on June 4, 1997. During the pregnancy and at the time of Cedric's birth, both Otha Lee Mayfield ("Appellee," "Respondent", "Mayfield") and Cedric's mother, Lakenya Johnson, believed that Mr. Mayfield was Cedric's father. The Appellant asserts that Mr. Mayfield signed a voluntary acknowledgment of paternity ("VAP") at the hospital on the day that Cedric was born. However, the record in this case does not contain

the alleged VAP.[1]  Therefore, this Court will treat the VAP as nonexistent for purposes of this appeal.

On April 4, 2000, the Tennessee Department of Human Services filed a Petition to Establish Parentage in the Juvenile Court of Memphis and Shelby County, Tennessee.  The same day, a consent order was entered in the trial court which was signed by Mr. Mayfield.  The consent order acknowledged Mr. Mayfield's paternity and stated that Mr. Mayfield would pay $150.00 per month for current child support and $75.00 per month for past-due child support.

At some point after Cedric's birth, both parties began to question whether Mr. Mayfield was in fact Cedric's father.  On September 20, 2004, Mr. Mayfield filed a Petition to Set Aside Judgment of Paternity.  In his petition, Mr. Mayfield stated that he had obtained a DNA paternity test which showed that the probability of his paternity of the child was zero percent.  Mr. Mayfield requested that the court order DNA testing to determine whether Mr. Mayfield was the father of Cedric and to remove any obligation for child support should he be determined to not be the father.  On October 11, 2004, the State of Tennessee ex rel. Lakenya Johnson filed a response in opposition to Mr. Johnson's petition.

A hearing was held on June 7, 2005 in juvenile court.  During that hearing, Ms. Johnson testified that she had informed her son that Mr. Mayfield was not his father.  The trial court, holding that there is a basis for opening up the issue of paternity, ordered DNA testing to determine whether Mr. Mayfield was the father.  The court stated:

> This Court and my duty is to make sure that the child is – not withstanding any support issue, monetary issue – that the child is protected.  Well, that's been stripped from the child.
> * * *
> Mother has told the child that he's not the father.  So this seven-year-old child knows that already.  There is this case that say[s] they can proceed on mistake of fact.  I'm going to rule ... that there is a basis for opening up the issue of paternity and issue the DNA test.

The trial court entered an order continuing the matter and ordering the DNA test on June 7, 2005.  On June 13, 2005, the State filed a request for a hearing before the judge.  A hearing was held on that request on July 7, 2005.  The trial court continued the case until August 2, 2005.

On August 2, 2005, another hearing took place before the referee.  The referee found that the DNA test indicated that Mr. Mayfield was not the father of Cedrick Demond Mayfield.   The trial

[1]The scope of our factual review is limited to the contents of the appellate record. *Richmond v. Richmond*, 690 S.W.2d 534, 535 (Tenn. Ct. App. 1985). The appellant has the responsibility to prepare a fair, accurate, and complete record on appeal. *Jennings v. Sewell-Allen Piggly Wiggly*, 173 S.W.3d 710 (Tenn. 2005).  In this case, the appellant did not ensure that a copy of the alleged 1997 VAP was included in the record before us, and therefore, we can not consider it as part of the facts of this case.

court noted that Cedric's relationship with Mr. Mayfield had ended after Cedric was informed that Mr. Mayfield was not the father. The trial court then set aside the consent order of April 4, 2000, and found the requirements of T.C.A. § 68-3-311 regarding new certificates of birth had been met and that the child's name should be changed from Mayfield to Johnson.

The state filed a request for a hearing before the judge on August 3, 2005, alleging that the referee had improperly set aside the consent order establishing paternity and had improperly allowed disestablishment of paternity based on DNA testing. A hearing was held before the juvenile judge on October 13, 2005, and the order was filed the same date and states:

> 1. That the Referee's ruling of August 2, 2005, be and is hereby reconfirmed as the decree of this Court.
>
> 2. That any unpaid child support through June 30, 2005, remains the obligation of the father.
>
> 3. That no support be ordered after July 1, 2005.
>
> 4. That the total amount of arrears be determined at a later date.
>
> 5. That arrears be repaid at the rate of $150.00 monthly.
>
> 6. That the costs be waived.

The State of Tennessee ex rel. Lakenya Johnson filed a Notice of Appeal on November 7, 2005. Appellant presents the following issues for review:

> 1. Whether the trial court improperly set aside a consent order of paternity and support; and
>
> 2. Whether the trial court violated Tennessee statutes regarding voluntary acknowledgment of paternity.

## II.    Analysis

### A.    T.C.A. § 24-7-113(e)(2)

Appellant argues that the trial court erred in granting Mr. Mayfield relief because more than five years had passed from the date Mr. Mayfield signed a voluntary acknowledgment of paternity under T.C.A. § 24-7-113. The statute provides in pertinent part:

> (a)    A voluntary acknowledgment of paternity which is completed under the provisions of § 68-3-203(g), § 68-3-302, or § 68-3-

305(b) or under similar provisions of another state or government shall constitute a legal finding of paternity on the individual named as the father of the child in the acknowledgment, subject to rescission as provided in subsection (c). The acknowledgment, unless rescinded pursuant to subsection (c), shall be conclusive of that father's paternity without further order of the court.

(b)    (1)    A voluntary acknowledgment of paternity which is completed under the provisions of § 68-3-203(g), § 68-3-302, or § 68-3-305(b), or under similar provisions of another state or government, when certified by the state registrar or other governmental entity maintaining the record of the acknowledgment, or the copy of the voluntary acknowledgment completed pursuant to § 68-3-302(e), shall be a basis for establishing a support order without requiring any further proceedings to establish paternity.

    (2)    An acknowledgment of paternity executed as described in subdivision (b)(1) shall be entitled to full faith and credit in any judicial or administrative proceeding in this state.

    (3)    No judicial or administrative proceedings are required, nor shall any such proceedings be permitted, to ratify an unchallenged acknowledgment of paternity in order to create the conclusive status of the acknowledgment of paternity.

*        *        *

(e)    (1)    If the voluntary acknowledgment has not been rescinded pursuant to subsection (c), the acknowledgment may only be challenged on the basis of fraud, whether extrinsic or intrinsic, duress, or material mistake of fact.

    (2)    The challenger must institute the proceeding upon notice to the other signatory and other necessary parties including the Title IV-D agency within five (5) years of the execution of the acknowledgment, and if the court finds based upon the evidence presented at the hearing that there is substantial likelihood that fraud, duress, or a material mistake of fact existed in the execution of the acknowledgment of paternity, then, and only then, the court shall order parentage tests. Such action shall not be barred by the five (5) year statute of limitations where fraud in the

procurement of the acknowledgment by the mother of the child is alleged and where the requested relief will not affect the interests of the child, the state, or any Title IV-D agency. Nothing herein shall preclude the challenger from presenting any other form of evidence as a substitute for the parentage tests if it is not possible to conduct such tests.

\*          \*          \*

T.C.A. § 24-7-113.

As stated previously, this Court has no voluntary acknowledgment of paternity in its record. Without the alleged VAP in the record, we are unable to ascertain whether a VAP was completed in the form prescribed by the statutes. Because it is not in the record, we deem there to be no VAP prior to the consent order of April 4, 2000.

## B.      Tenn. R. Civ. P. 60.02

Tenn. R. Juv. P. 1(b) provides that "all paternity cases" are governed by the Tennessee Rules of Civil Procedure. Therefore, parties seeking post-judgment relief from a final judgment or order in a juvenile court proceeding involving a child's paternity must proceed in accordance with Tenn. R. Civ. P. 60. In his brief, Mr. Mayfield relies on Rule 60.02 for relief in this case. The State of Tennessee argues that no relief can be granted under Rule 60.02 due to the time constraints set forth in the rule.

Relief under Rule 60.02 is considered "an exceptional remedy." *Nails v. Aetna Ins. Co.*, 834 S.W.2d 289, 294 (Tenn. 1992). The function of Rule 60.02 is "to strike a proper balance between the competing principles of finality and justice." *Jerkins v. McKinney*, 533 S.W.2d 275, 280 (Tenn. 1976). Rule 60.02 operates as "an escape valve from possible inequity that might otherwise arise from the unrelenting imposition of the principle of finality imbedded in our procedural rules." *Thompson v. Fireman's Fund Ins. Co.*, 798 S.W.2d 235, 238 (Tenn. 1990). However, "[b]ecause of the 'principle of finality,' the 'escape valve' should not be easily opened." *Banks v. Dement Constr. Co.*, 817 S.W.2d 16, 18 (Tenn. 1991) (quoting *Toney v. Mueller Co.*, 810 S.W.2d 145, 146 (Tenn. 1991)).

The disposition of motions under Rule 60.02 is best left to the discretion of the lower court, and such decisions are reversed only if they constitute an abuse of that discretion. *Spruce v. Spruce*, 2 S.W.3d 192, 194 (Tenn. Ct. App .1998) (quoting *Underwood v. Zurich Ins. Co.*, 854 S.W.2d 94 (Tenn.1993)). To set aside a judgment under Rule 60.02, the burden is upon the movant to prove

that he is entitled to relief, and there must be proof of the basis on which relief is sought. See *Brumlow v. Brumlow*, 729 S.W.2d 103, 106 (Tenn. Ct. App. 1986); *Jefferson v. Pneumo Servs. Corp.*, 699 S.W.2d 181, 186 (Tenn. Ct. App. 1985). A motion for relief from a judgment pursuant to Rule 60.02 addresses the sound discretion of the trial judge. Accordingly, the scope of review on appeal is limited to whether the trial judge abused his discretion. *See Toney v. Mueller Co.*, 810 S.W.2d 145 (Tenn. 1991); *Travis v. City of Murfreesboro*, 686 S.W.2d 68, 70 (Tenn. 1985).

Rule 60.02 of the Tennessee Rules of Civil Procedure states in its entirety:

> Rule 60.02 Mistakes; Inadvertence; Excusable Neglect; Fraud, etc.
>
> On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1) and (2) not more than one year after the judgment, order or proceeding was entered or taken. A motion under this Rule 60.02 does not affect the finality of a judgment or suspend its operation, but the court may enter an order suspending the operation of the judgment upon such terms as to bond and notice as to it shall seem proper pending the hearing of such motion. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding, or to set aside a judgment for fraud upon the court. Writs of error coram nobis, bills of review and bills in the nature of a bill of review are abolished, and the procedure for obtaining relief from a judgment shall be by motion as prescribed in these rules or by an independent action.

Tenn. R. Civ. P. 60.02.

In this case, the consent order establishing paternity was entered April 4, 2000. The Petition to Set Aside Judgment of Paternity was not filed until September 20, 2004. Because more than one year elapsed between the time of the consent order and Mr. Mayfield's petition, Mr. Mayfield cannot

be considered to be seeking relief under subsections (1) or (2) of Rule 60.02. Therefore, the applicable section remaining under which Rule 60.02 relief may be granted is subsection (4), when "it is no longer equitable that a judgment should have prospective application." Tenn. R. Civ. P. 60.02.

Unless the request for relief is governed by Tenn. R. Civ. P. 60.02(1) or 60.02(2), a motion seeking post judgment relief must be made "within a reasonable time." Tenn. R. Civ. P. 60.02. The court should apply equitable principles to determine whether a motion has been made within a reasonable time. *White v. Armstrong*, No. 01A01-9712-JV-00735, 1999 WL 33085, at *3 (Tenn. Ct. App. Jan. 27, 1999). As part of its analysis, the court should consider several factors, including (1) the circumstances under which the original paternity order was entered; (2) the timing and circumstances of the previously adjudicated father's questioning that he was the child's father; (3) whether the previously adjudicated father presented or attempted to present the results of genetic, DNA, or blood testing; and (4) the burdens imposed on the previously adjudicated father and on the child by the continued enforcement or by the reopening of the judgment of paternity. *Id.* (citations omitted). In this case, the original consent order establishing paternity was entered on April 4, 2000. Discussions with Ms. Johnson led Mr. Mayfield to question his paternity, and those suspicions eventually led Mr. Mayfield to utilize DNA testing. In September 2004, after obtaining DNA testing results which indicated that Mr. Mayfield was not Cedric's father, he filed his Petition to Set Aside Judgment of Paternity. Mr. Mayfield's request was filed within a reasonable time to satisfy the requirements of Tenn. R. Civ. P. 60.02.

In several earlier decisions, this court has considered the issue of whether a putative father may be relieved of the obligation to support a child when blood or DNA testing conclusively establishes that the child is not his own. *See Taylor v. Wilson*, No. W2004-00275-COA-R3-JV, 2005 WL 517548 (Tenn. Ct. App. March 3, 2005); *White*, 1999 WL 33085, at *3-4; *Richards v. Read*, No. 01A01-9708-PB-00450, 1999 WL 820823 (Tenn. Ct. App. July 27, 1999); *Harmon v. Harmon*, No. 02A01-9709-CH-00212, 1998 WL 835563 (Tenn. Ct. App. Dec. 3, 1998).

In *Taylor*, the trial court dismissed an appellant's petition to rescind voluntary legitimation, which was filed after DNA testing conclusively established that the appellant was not the child's father. *Taylor*, 2005 WL 517548, at *1. Reversing the decision of the trial court, we stated:

> [I]t is apparent that Tennessee law strongly favors requiring biological parents to bear responsibility for their own children, and that this policy also favors relieving putative fathers of the burden of supporting children who have been shown, through conclusive evidence such as DNA testing, not to be their natural offspring.

*Id.* at *4.

In *White*, we considered a petition for post-judgment relief from a child support order when the appellant, who had voluntarily legitimated the child in question three years earlier, discovered through genetic testing that he could not be the child's biological father. *White*, 1999 WL 33085. After concluding that the man and the child's mother had perpetrated a fraud on the court in obtaining the original legitimation order, the juvenile court declined to grant relief. *Id.* Reversing the trial court, we concluded that the appellant had not perpetrated a fraud on the court, and we noted that, under Tennessee law, "it is of overriding importance ... that one conclusively established in law not to be the father of a child be not declared as the father of that child." *Id.* at *5 (quoting *Johnson v. Johnson*, No. 02A01-9605-JV-00123, 1997 WL 271787, at *3 (Tenn. Ct. App. Jan. 7, 1997)).

Further, in *Shell v. Law*, 935 S.W.2d 402, 408 (Tenn. Ct. App. 1996), we stated:

> Under the authority of *Bass* and T.C.A. 24-7-112, we believe that all common law presumptions relating to the paternity and legitimacy are rebuttable and the public policy has now been established by the General Assembly that true parentage is the end that should be pursued by the courts in paternity actions.

*Id.* (citing *Bass v. Norman*, No. 164, 1989 WL 157884 (Tenn. Ct. App. Dec. 29, 1989)).

In this case, the record reflects that Mr. Mayfield believed that Cedric was his biological son when he entered into the consent order of April 4, 2000. Sometime after that date, Mr. Mayfield began to question his paternity. After DNA testing confirmed that Mr. Mayfield was not Cedric's father, Mr. Mayfield properly sought prospective relief from the court.

We noted in *White* that "[p]ost-judgment relief in cases of this sort should not be granted without analyzing the burdens that granting relief or failing to grant relief will place on all who have an interest in the proceeding." *White*, 1999 WL 33085, at *5. The parties with an interest in this proceeding include Mr. Mayfield, Ms. Johnson, the State of Tennessee, and Cedric.

Mr. Mayfield's interests lean heavily in favor of relief from his support obligations. If relief is not granted to Mr. Mayfield, he will be required to financially support a child who is not his own. This burden is quite significant because Cedric is nine years old, and Mr. Mayfield's support obligations would not end for another nine years. Regarding Ms. Johnson's interests, she is already obligated to support Cedric because she is his mother. If relief is granted to Mr. Mayfield, Ms. Johnson will be able to pursue Cedric's biological father for support.

Further, Cedric has an interest in being financially supported by his biological father. The State of Tennessee argues in its brief that "[w]hile it may seem unfair to Appellee to require him to continue to pay support for a child who we now know not to be his biological child, it is wholly inequitable to harm an innocent child who has relied on his regular conduct for nurturing and support." However, the record shows that Cedric's mother told him that Mr. Mayfield was not his biological father. After he was so informed, any relationship between Cedric and Mr. Mayfield dissolved.

Finally, the State has an interest in ensuring that biological and adoptive parents support their children. Further, the State has an interest in safeguarding public funds by making certain that biological parents fulfill their duties to support their children. However, the interest of the state to safeguard public funds does not outweigh Mr. Mayfield's interest to be free of his financial burden to support a child that he did not father. Therefore, we conclude that the trial court did not abuse its discretion in granting relief to Mr. Mayfield.

## III.    Conclusion

For the foregoing reasons, we affirm the order of the trial court. This case is remanded to the trial court for such other procedures that are necessary to determine the amount of arrearage and terms of payment as referred to in the trial court's final order of October 13, 2005. Costs of this appeal are assessed against the Appellant, the State of Tennessee.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.