IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
June 10, 2013 Session

## AMANDA LEENHOUTS
**v.**
## GERT JAN LEENHOUTS

**Appeal from the Davidson County Circuit Court**
**No. 12D-1113    Phillip R. Robinson, Judge**

**No. M2012-01844-COA-R3-CV - Filed July 31, 2013**

This appeal involves a motion to set aside a default judgment. The wife filed a complaint for divorce. The husband was served with process. After the husband failed to file an answer, the wife filed a motion for a default judgment. The husband filed no response to the motion. The trial court granted the wife a default judgment and held a hearing on the wife's divorce complaint. The husband did not appear at the hearing. Based on the evidence wife presented at the hearing, the trial court divided the marital estate. The husband then filed a motion to set aside both the default judgment and the divorce decree. The trial court denied the husband's motion, and the husband now appeals. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J. W.S., and DAVID R. FARMER, J., joined.

Julie R. P. King and David L. Scott, Murfreesboro, Tennessee, for Defendant/Appellant, Gert Jan Leenhouts

Karla Hewitt Miller and Rachel D. Sharp, Nashville, Tennessee, for Plaintiff/Appellee, Amanda Leenhouts

## FACTS AND PROCEEDINGS BELOW

Defendant/Appellant Gert Jan Leenhouts ("Husband") and Plaintiff/Appellee Amanda Leenhouts ("Wife") married in 2007. No children were born of the marriage, but the parties acquired several pets. On April 9, 2012, after five years of marriage, Wife filed a complaint for divorce in the Circuit Court for Davidson County, Tennessee, alleging irreconcilable differences and inappropriate marital conduct. The next day, on April 10, 2012, Husband was properly served with the complaint and summons.[2]

Husband did not file an answer or other responsive pleading to Wife's complaint. Consequently, on May 17, 2010, Wife filed a motion for default judgment. The motion attached a certificate of service indicating that it was mailed to Husband on May 15, 2012. Husband did not file a response to Wife's motion.

On June 1, 2012, the trial court held a hearing on Wife's motion for default judgment. Husband did not appear at the hearing. After the hearing, the trial court entered an order granting Wife's motion for default judgment. The order stated: "[P]roper service having been made upon the Husband on April 10, 2012, but the Husband . . . failed to file an Answer or otherwise respond in this matter." The order indicates that a copy of the order was sent to Husband on June 13, 2012, including notice of the final divorce hearing to be held on July 10, 2012.

On July 5, 2012, two business days before the scheduled hearing, Husband apparently e-mailed Wife's attorney to inform the attorney that he would not be present at the final hearing. Husband indicated that he would not appear because he did not have sufficient notice for his employer. Wife's counsel responded by emailing Husband that he had been

---

[1]**Rule 10. Memorandum Opinion**

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

Tenn. Ct. App. R. 10.

[2]Husband does not dispute that he was served with the complaint.

sent notice of the scheduled hearing on June 13, 2012, and that the final hearing would proceed as scheduled.

As promised, the final hearing took place as scheduled on July 10, 2012. At the hearing, Wife testified as to the value of the parties' marital residence as well as the indebtedness on it,[3] and told the trial court that both parties were still residing there. Wife provided the trial court with a list of personal property that she sought in the divorce, and asked the trial court to award her the listed items and award Husband the remainder of their personal property, including "all the furniture, TVs, [and] electronics," with minor exceptions. Wife also asked the trial court to award her a retirement account in her name. She told the trial court that the parties had not co-mingled their finances during the marriage. Wife testified that she had been the "primary caregiver" for the couple's pets and asked the trial court to award the pets to her.

At the conclusion of the hearing, the trial court issued an oral ruling. It first found that Husband "had proper notice and failed to appear or otherwise defend himself." It then divided the marital estate in accordance with Wife's testimony. It awarded Wife the marital residence and the associated debt, her retirement account, and all pets. The parties were awarded their respective bank accounts and vehicles. The trial court awarded Wife the listed items of personal property that she requested and awarded Husband the rest. The trial court also awarded Wife alimony *in solido* for her attorney fees in the amount of $2500. On July 18, 2010, the trial court entered a written order consistent with its oral ruling.

Two days later, Husband filed a motion to set aside the default judgment and the final decree of divorce. He claimed that he had a valid defense to the trial court's division of the marital property and attached to his motion a proposed answer that set forth the defense. Pursuant to Rule 55.02[4] of the Tennessee Rules of Civil Procedure, Husband asked the trial court to set aside both the default judgment and the final divorce decree in accordance with Rule 60.02(1), which permits the trial court to set aside on the basis of "mistake, inadvertence, surprise or excusable neglect." Tenn. R. Civ. P. 60.02(1).

In support of his motion to set aside, Husband filed his own affidavit. In the affidavit, Husband asserted that he never received a copy of the motion for default judgment; he claimed that he first learned of the motion when he received the order from the June 1, 2012

---

[3]Wife apparently testified that the marital residence was worth $160,000 but the parties owed $154,000 on it.

[4] Rule 55.02 states, "For good cause shown the court may set aside a judgment by default in accordance with Rule 60.02." Tenn. R. Civ. P. 55.02

hearing that was mailed to him on June 13, 2012. Husband's affidavit stated that he informed Wife's attorney that he would not be present for the July 10, 2012 court date "because of [his] work schedule" and that he "was unable to coordinate a different date."

On August 3, 2012, the trial court held a hearing on Husband's motion to set aside. Husband appeared at the hearing and was represented by counsel. The trial court heard testimony at the hearing from both Wife and Husband.

In her testimony, Wife noted that the parties were both still living in the marital residence when she filed her motion for default judgment. Wife testified that she personally placed on Husband's desk in the marital residence an envelope addressed to him from her attorney, containing the motion for default judgment. On the same day, Wife received a similar envelope from her attorney that also contained a copy of the motion for default judgment. A couple of days later, Wife said, she went back into the office where she had placed the envelope addressed to Husband; she saw the envelope unopened in the trash can. Wife said that she did not ask Husband about it. Wife also introduced as an exhibit a copy of a post Husband made on his Facebook page on July 20, 2012, the day Husband filed his motion to set aside. The post said: "Hahahahaha . . . and you thought you had me, you stupid f- - -ing c- -t! (no names mentioned) Payback is a b- - - -. REVENGE is a M - - - - R_F- - - - R!"

Husband also testified. He denied that he ever received the motion for default judgment that was mailed to him and claimed that he opened all that the mail that he received from Wife's attorney. He acknowledged that he received Wife's initial divorce complaint in April, that he received notice that the trial court's default judgment order was entered on June 13th, and that he made no attempt to file anything with the court.

Husband testified about his communication with Wife's attorney on July 5. He said that he sent an e-mail to Wife's attorney explaining that he would be unable to make it to the July 10 hearing because of work. He said that he explained to the attorney that the Meineke Car Care Center where Husband is employed as a manager has mandatory meetings at 10:00 a.m. on Tuesdays, so he "could not make it to court at 9:00 a.m." On cross examination, Husband clarified that the mandatory "meetings" were actually conference calls that routinely occurred on Tuesdays and Wednesdays.

The trial judge asked Husband why, after he was served, he did not file an answer. Husband claimed it was because he did not have money for an attorney. The trial judge also asked Husband to whom the disturbing post on his Facebook page was directed. Husband denied that the post was directed toward Wife:

> THE COURT: You're saying you weren't referring to your ex-wife?

-4-

HUSBAND: Yes, sir.
THE COURT: All right. Help me with this. Who in the world were you referring to when you posted this?
HUSBAND: Towards somebody else.
THE COURT: Who?
HUSBAND: Somebody else.
THE COURT: Are you refusing to answer my question?
HUSBAND: No, sir, I'm not.
THE COURT: Answer my question.
HUSBAND: Someone I know named Lisa.
THE COURT: Lisa?
HUSBAND: Yes.
THE COURT: And you were directing this toward an individual named Lisa?
HUSBAND: Yes, sir.

Husband did not explain who "Lisa" was. In the course of extended questioning about "Lisa," Husband claimed that he could not remember her last name and – two weeks after he posted the comment on Facebook – could not remember what "Lisa" did that made him angry enough to call her such vile names.

At the conclusion of the hearing, the trial court issued an oral ruling denying Husband's motion to set aside the default judgment and the final judgment of divorce. After being served with process and the divorce complaint, and even after getting the order entering default judgment and setting the hearing, the trial court noted, Husband "did nothing." It observed that he contacted opposing counsel about not appearing at the hearing, but did not inform the trial court that he could not attend or that he allegedly did not receive notice of the motion for default judgment. The trial court then explained why he found Husband's testimony not credible:

> The truth of the matter is had this gentleman been living at a different location and he came in and claimed I just didn't get the notice of default, then, frankly, this Court would have set this aside.

> In this particular instance I have [Wife] testifying that she saw the envelope at or about that time come in and she put it on his desk, and then she sees it later in the trash can. I'm always suspicious, frankly, of relying on one party to testify about service on another, but – and I can kind of agree with counsel, you can't determine – although the timing is very suspect, I can't determine if the Facebook posting is directed toward [Wife].

-5-

What does stand out to me is that I have serious problems with [Husband's] credibility. He's put a most offensive statement on his Facebook page, but he can't really remember exactly the name of the person he was directing it to, and he can't really remember why he would say such outrageously terrible things to someone else. That makes me really question his credibility.

In this instance . . . the Court finds [Husband] is not a credible witness in regards to whether or not he received notice. Proof before me is he did receive notice of the hearing.

Further even if he didn't, he took no steps to protect himself. He did receive notice of the hearing date and he chose not to attend or otherwise notify the Court.

. . .

This gentleman, as far as this Court's concerned, at the very least could have contacted the Court or sent something – like a fax or letter or something to – a phone call would have probably been enough for this Court to continue the hearing to another day[.]

And, frankly, had we had a hearing on that day and he'd been present the Court would have allowed him to present a division of property. Irrespective under the circumstances I think he has a responsibility to protect himself. He simply let himself down, as well as the Court.

The trial court entered a written order denying Husband's motion to set aside. In the order, the trial court found that Husband was not a credible witness, that he was properly notified of the hearing on Wife's motion for default judgment, and that he had shown no excusable neglect or other reason to set aside the default judgment. Husband now appeals.

### ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, Husband argues that the trial court abused its discretion in denying his motion to set aside the default judgment and the final divorce decree. Husband also contends that the trial court erred in "failing to make a valuation of the real property and personal property comprising the marital estate, resulting in an inequitable division of property."

We review the trial court's findings of fact is *de novo* with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); ***Kendrick v. Shoemake***, 90 S.W.3d 566, 570 (Tenn. 2002); ***Marlow v. Parkinson***, 236 S.W.3d 744, 748 (Tenn. Ct. App. 2007). The trial court's assessment of the witnesses' credibility is given

great weight, as "trial courts are normally in the best position to judge the credibility of the witnesses since they have seen and heard the witnesses testify." *In re Adoption of A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2007); *Gaskill v. Gaskill*, 936 S.W.2d 626, 633 (Tenn. Ct. App. 1996); *Massengale v. Massengale,* 915 S.W.2d 818, 819 (Tenn. Ct. App.1995). The trial court's legal conclusions are reviewed *de novo*, with no presumption of correctness. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000).

We review the trial court's grant of a default judgment and its refusal to set aside a judgment under Rules 55.02 and 60.02 for an abuse of discretion. *Reynolds v. Battles*, 108 S.W.3d 249, 251 (Tenn. Ct. App. 2003); *State ex rel. Jones v. Looper*, 86 S.W.3d 189, 193 (Tenn. Ct. App. 2000); *Underwood v. Zurich Ins. Co.*, 854 S.W.2d 94, 97 (Tenn. Ct. App. 1993). A court will be found to have abused its discretion only when it has "applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining." *State v. Shuck*, 953 S.W.2d 662, 669 (Tenn. 1997).

## ANALYSIS

Husband argues on appeal that the trial court erred in declining to set aside the default judgment and the final divorce decree on the basis of "mistake, inadvertence, surprise or excusable neglect." Tenn. R. Civ. P. 60.02.

As the party who seeks to have the default judgment set aside, Husband bears the burden of showing that he is entitled to such relief. *Henry v. Goins*, 104 S.W.3d 475, 482 (Tenn. 2003); *Nelson v. Simpson*, 826 S.W.2d 483, 485 (Tenn. Ct. App. 1991).

In determining whether a default judgment should be set aside under Rules 55.02 and 60.02 of the Tennessee Rules of Civil Procedure, the court generally considers three factors: "(1) whether the default was willful; (2) whether the defendant has a meritorious defense; and (3) whether the non-defaulting party would be prejudiced if relief were granted." *Henry*, 104 S.W.3d at 481. The court first determines whether the conduct that precipitated the default was willful. *Discover Bank v. Morgan*, 363 S.W.3d 479, 494 (Tenn. 2012). If the "defaulting party acted willfully, the judgment cannot be set aside on 'excusable neglect' grounds, and the court need not consider the other factors." *Id.*

In this case, the only justification offered by Husband for his failure to act was that he did not receive a copy of Wife's motion for default judgment. The trial court heard conflicting evidence on this issue; it found that Husband's testimony was not credible, and so credited Wife's testimony that Husband received the mailed copy of her motion and threw it in the trash in their home. *Pryor v. Rivergate Meadows Apartment Assocs. Ltd. P'ship*, 338 S.W.3d 882, 886 (Tenn. Ct. App. 2009) (citing *Estate of Vanleer v. Harakas*, No.

M2001-00687-COA-R3-CV, 2002 WL 32332191, at \*6; 2002 Tenn. App. LEXIS 846, at \*15-16 (Tenn. Ct. App. Dec. 5, 2002)); *see also Frierson v. Johnson*, No. M2006-02598-COA-R3-CV, 2008 WL 555721, at \*6; 2008 Tenn. App. LEXIS 113, at \*13-14 (Tenn. Ct. App. Feb. 28, 2008). We give "great weight" to the trial court's credibility finding. *See In re Adoption of A.M.H.*, 215 S.W.3d at 809. The evidence in the record fully supports both the trial court's assessment of Husband's credibility and its finding that Husband in fact received the motion and disregarded it. Moreover, as emphasized by the trial court below, it is undisputed that Husband received the divorce complaint as well as the order granting default judgment and setting the final hearing, and nevertheless "did nothing." Under these circumstances, Husband's argument is without merit.

Husband also contends that the trial court erred in declining to set aside the final decree of divorce because its division of the marital estate is inequitable. Specifically, Husband argues that the final decree should be vacated because the trial court made no finding as to the valuation of the property awarded to Husband and the marital estate as a whole. In response, Wife argues that Husband waived any argument on the trial court's division of the marital property by his deliberate decision not to participate in the hearing. We agree with Wife. In the hearing on the division of the parties' marital property, Wife's testimony regarding the value of the house and the other property was undisputed, as Husband chose not to attend the hearing. "It is well settled that party waives an issue on appeal that was not first raised in the trial court." *Skaan v. Federal Express Corp.*, No. W2011-01807-COA-R3-CV, 2012 WL 6212891, at \*7 (Tenn. Ct. App. Dec. 13, 2012) (citing *Powell v. Cmty. Health Sys., Inc*., 312 S.W.3d 496, 511 (Tenn. 2010)).

Moreover, even if this issue were not waived, after carefully reviewing the evidence adduced at the hearing, we find that the trial court's factual findings and its division of the marital property are fully supported by the evidence.

Thus, we find no abuse of the trial court's discretion in either its denial of Husband's motion to set aside the default judgment or in its equitable division of the marital estate. Based on this, we affirm the decision of the trial court.

Wife also requests an award of her reasonable attorney fees on appeal. However, she cites no authority for such an award. Therefore, we decline to award Wife attorney fees on appeal.

## CONCLUSION

The decision of the trial court is affirmed. Costs on appeal are assessed against Defendant/Appellant Gert Jan Leenhouts and his surety, for which execution may issue if necessary.

_____

HOLLY M. KIRBY, JUDGE