FILED
Nov 08, 2024
01:21 PM(CT)
TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| John F. Oldham | ) | Docket No.      2022-03-0420 |
| | ) | |
| v. | ) | State File No.   66575-2020 |
| | ) | |
| Freeman Webb Company Realtors | ) | |
| d/b/a Sunnybrook, et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | Heard October 1, 2024 |
| Compensation Claims | ) | in Knoxville, TN |
| Pamela B. Johnson, Judge | ) | |

---

### Affirmed in Part, Reversed in Part, Modified in Part, and Certified as Final

---

This compensation appeal is the second appeal in this matter and raises an issue of first impression regarding statutory interpretation. The employee suffered an injury to his foot and leg in October 2020, which resulted in a court-approved settlement in April 2022 for an "original award" of permanent disability benefits. After the expiration of the initial period of compensation, the employee filed a petition for increased benefits, extraordinary relief, or permanent total disability benefits. The employer initially denied that the employee was entitled to increased benefits due to its contention that other, non-work-related conditions were the primary cause of the employee's current condition and work restrictions. Later, the employer filed a motion for partial summary judgment, arguing that the employee could not be deemed permanently totally disabled because the court had previously approved a settlement and entered a judgment for permanent *partial* disability. At that time, the trial court declined to hear the motion for partial summary judgment, concluding that it was akin to a bifurcated trial, which is disfavored in workers' compensation cases. The employer appealed that order, and we concluded it is within a trial court's discretion whether and at what point in the course of litigation to entertain a pre-trial motion. However, we vacated the court's order to the extent it suggested the court could not entertain a motion for partial summary judgment addressing a question of law prior to a compensation hearing. On remand, the court again declined to hear the motion for partial summary judgment until the day of the compensation hearing. Following the hearing, the court denied the motion for partial summary judgment and awarded permanent total disability benefits. The employer has appealed. Upon careful consideration of the

record and the arguments of counsel, we affirm in part, reverse in part, and modify in part the trial court's order, and we certify the modified order as final.

Judge Meredith B. Weaver delivered the opinion of the Appeals Board in which Presiding Judge Timothy W. Conner and Judge Pele I. Godkin joined.

A. Allen Grant and Benjamin T. Norris, Nashville, Tennessee, for the employer-appellant, Freeman Webb Company Realtors d/b/a Sunnybrook

Andrew J. Roberto, Knoxville, Tennessee, for the employee-appellee, John F. Oldham

**Factual and Procedural Background**

We previously discussed the facts and procedural history of this case in our prior decision, as set out in pertinent part below:

> John Oldham ("Employee") worked for Freeman Webb Company Realtors ("Employer") as a maintenance technician. On October 6, 2020, Employee sustained a work-related injury when his foot became caught in the seat arm of a golf cart he was working on, and he fell. The fall caused a displaced femoral fracture in his right leg. After a period of authorized medical treatment, the parties reached a tentative settlement of Employee's "original award" based on a medical impairment rating of 8%. On April 28, 2022, the trial court approved the settlement, which included the following language:
>
>> If, at the end of the initial compensation period, Employee has not returned to work with any employer or has returned to work at a lower rate of pay than Employee received on the date of the injury, Employee may file a Petition for Benefit Determination to determine *whether Employee is entitled to increased benefits under Tennessee Code Annotated section 50-6-207(3)(B) or extraordinary relief under Tennessee Code Annotated section 50-6-242(a)* . . . . If the judge determines Employee is entitled to an increased award or extraordinary relief, Employer will be credited for payment of the original award under this agreement.
>
> (Emphasis added.) After the initial compensation period expired, Employee filed a new petition in November 2022 seeking "increased benefits, extraordinary relief and/or Permanent Total Disability." . . .
>
> . . . .

2

Employer filed a motion for partial summary judgment on October 4 arguing that, as a matter of law, Employee was disqualified from seeking either extraordinary relief or permanent total disability. Employer asserted, in part, that "[b]ecause Employee entered into a binding settlement agreement for permanent partial disability benefits that was approved by [the] Court, he is not eligible for permanent total disability benefits." It further argued that Employee cannot qualify for extraordinary relief under Tennessee Code Annotated section 50-6-242 because his medical impairment rating was less than 10%, and a rating of 10% or more is a statutory prerequisite for seeking extraordinary relief. On the face of its motion for partial summary judgment, Employer included a notice setting an in-person hearing to address its motion for November 15, 2023, as required by Tenn. Comp. R. and Regs. 0800-02-21-.18(1)(c). Thereafter, a separate notice of hearing was filed confirming that the motion hearing was set for November 15, which was five weeks before trial. On November 9, 2023, a new Notice of Hearing was filed reflecting the court's decision to reset the hearing on Employer's motion for summary judgment for December 20, the same day as the trial.

*Oldham v. Freeman Webb Company Realtors d/b/a Sunnybrook*, No. 2022-03-0420, 2024 TN Wrk. Comp. App. Bd. LEXIS 8, at *2-5 (Tenn. Workers' Comp. App. Bd. Mar. 6, 2024). Employer appealed the order postponing a hearing on the motion for partial summary judgment. *Id.* at *6. On appeal, we summarized the relevant issue as follows:

> In the context of the present case, we are asked to address whether motions for partial summary judgment are, *per se*, prohibited by the statutes and rules applicable to the Court of Workers' Compensation Claims. We conclude they are not.

*Id.* at *12. We explained that "a trial court's decision regarding whether to resolve any particular issues at an interlocutory stage of the case is within its sound discretion, and we will disturb such determinations only upon a showing that the trial court abused its discretion." *Id.* at *14. As such, we affirmed the trial court's decision not to conduct the summary judgment hearing under the circumstances presented in the case, but we vacated the court's order to the extent it suggested a trial court could not entertain a motion for partial summary judgment addressing purely legal issues prior to trial.[1]

On remand, the trial court elected to hear Employer's motion for partial summary judgment on the morning of trial. The trial court took the motion under advisement and proceeded with the trial, which included testimony from Employee and his wife, as well as testimony from a representative of the insurance carrier and testimony from a vocational

---

[1] Employer also appealed the trial court's denial of a motion to quash a subpoena duces tecum of its potential vocational expert. That subpoena is not at issue in the current appeal.

expert on behalf of Employee. Also admitted into evidence were the depositions of Dr. Scott Smith, Employee's treating physician, and Dr. William Kennedy, who evaluated Employee at Employee's counsel's request. In addition to its argument that Employee could not seek an award of extraordinary relief or permanent total disability, Employer also argued that the nonunion of Employee's femoral fracture was not a direct and natural consequence of the work injury and was instead primarily related to Employee's smoking history. In support of this defense, it relied on testimony from Dr. Smith indicating that many factors contributed to the nonunion of the fracture and that he "would put a lot of [e]ffect" on Employee's smoking as the reason his fracture did not heal. Finally, Employer also presented surveillance of Employee for purposes of showing the court Employee's gait and daily activities.

Following the hearing, the trial court issued a compensation order denying Employer's motion for partial summary judgment and awarding Employee permanent total disability benefits. In denying the motion, the court determined both the statute and initial settlement agreement are "silent as to when an employee may seek permanent total disability benefits." The trial court reviewed pre-reform cases addressing a process called "reconsideration" as described in Tennessee Code Annotated section 50-6-241(a)(2) (2012), which is no longer part of Tennessee's Workers' Compensation Law.[2] Based on those cases, the court analogized the pre-reform process of reconsideration with the current process for seeking increased benefits and reasoned Employee was not barred from seeking permanent total disability benefits after receiving a permanent partial disability settlement. The court then determined there was insufficient medical proof to support Employer's argument that Employee's smoking history constituted an intervening condition that primarily caused the nonunion, and it concluded Employee is permanently and totally disabled as a result of the work accident and resulting injury. In doing so, the court stated it considered Employee's "medical impairment, permanent restrictions and need for a walking aid, as well as his age, education, experience, lack of training in traditional sedentary jobs, and the lack of job opportunities in the local labor market . . . ." Employer has appealed the court's decision to delay the summary judgment hearing until the day of trial, the denial of the motion for partial summary judgment, and the award of benefits.

## Standard of Review

The standard we apply in reviewing the trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2023). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give

---

[2] That section provided, in relevant part, that a court may "reconsider, upon the filing of a new cause of action, the issue of industrial disability." Tenn. Code Ann. § 50-6-241(a)(2) (1992). Pre-reform courts interpreting this statute had concluded that, in reconsideration cases, an employee could seek an award of permanent total disability benefits. *See, e.g.*, *Caruthers v. Aerostructures Corp.*, No. M2005-01370-WC-R3-CV, 2006 Tenn. LEXIS 1134, at *6-7 (Tenn. Workers' Comp. Panel Dec. 13, 2006).

4

considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). Moreover, the interpretation and application of statutes and regulations are questions of law that are reviewed de novo with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2023).

**Analysis**

Employer raises several issues in its appeal. First, it contends the trial court erred in declining to hear the motion for partial summary judgment prior to the date of trial. Second, it argues Employee was precluded from pursuing an award of permanent total disability benefits based on the plain language of Tennessee Code Annotated section 50-6-207 and the specific terms of his settlement agreement. Finally, Employer asserts that the work accident is not the primary cause of Employee's current condition and work restrictions because the nonunion of his fracture is not a direct and natural consequence of his initial injury. For his part, Employee argues Employer waived its defenses regarding permanent total disability and asserts that this appeal is frivolous.

*Pre-Trial Dispositive Motions*

With respect to the issue of pre-trial dispositive motions, we have previously stated:

[T]he text of Rule 56 does not specify a time within which a trial court must conduct a hearing on a previously filed motion for summary judgment . . . . It gives a trial court significant discretion to determine the appropriate time in the course of litigation to conduct a hearing on a party's motion for summary judgment.

*Hollis v. Komyo America*, No. 2016-03-0298, 2017 TN Wrk. Comp. App. Bd. LEXIS 25, at *7 (Tenn. Workers' Comp. App. Bd. Mar. 7, 2017). Moreover, we explained that "in setting hearings on pending motions, a trial court must balance the interests of both parties, give each side a reasonable and meaningful opportunity to prepare for the motion hearing, and set the hearing as expeditiously as it deems appropriate under the circumstances of the case." *Id*. at *9-10.

We relied on this analysis in the first appeal of this case and determined the trial court did not abuse its discretion in declining to set a hearing on Employer's motion prior

5

to the trial date.  Specifically, we reasoned that the motion hearing date originally selected by Employer was one month prior to the compensation hearing date, and the parties had already retained experts.  Even if the trial court had conducted the motion hearing as originally scheduled, trial preparations would have continued while the court considered the merits of the motion and prepared its order.  Thus, there was little evidence that conducting the motion hearing on the date originally scheduled by Employer would have saved any significant time or expense for the parties or promoted judicial efficiency.  On remand, the trial court again declined to hear the motion separately and instead scheduled it for the day of trial.

Employer contends that because its motion was one for *partial* summary judgment, Rule 56.05 of the Tennessee Rules of Civil Procedure required the motion hearing to be conducted prior to trial.  The relevant portion of Rule 56.05 on which Employer relies states:

> If on motion under this rule judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall *if practicable* ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted.  It shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy . . . .

(Emphasis added.)  Employer argues that the language of Rule 56.05 expressly mandates that the trial court set a hearing and issue an order addressing the undisputed facts and those facts that remain disputed for trial when the summary judgment motion is not dispositive of the entire case.  In short, Employer's position is that setting a pre-trial hearing for partial summary judgment is not discretionary.  We are unpersuaded.

First, Employer has not provided any authority supporting its interpretation of Rule 56.05.  Previously, this portion of Rule 56 has been read to provide a trial court with the opportunity to narrow the issues for trial and "identify material facts not in controversy." *Walker v. Walker*, No. M2018-01140-COA-R9-CV, 2020 Tenn. App. LEXIS 47, at \*11 n.2 (Tenn. Ct. App. Jan. 31, 2020).  In the present case, however, Employer's motion for partial summary judgment hinged solely on a question of law.  Thus, there were no disputed facts for the court to ascertain in a pre-trial setting as contemplated by Rule 56.05.  Furthermore, the rule itself states the court "shall *if practicable* ascertain what material facts are actually and in good faith controverted." Tenn. R. Civ. P. 56.05 (emphasis added).  This again evidences the broad discretion of a trial court to address pre-trial issues pursuant to the Rules of Civil Procedure.

6

Second, as we stated previously, "a trial court's decision regarding whether to resolve any particular issues at an interlocutory stage of the case is within its sound discretion, and we will disturb such determinations only upon a showing that the trial court abused its discretion." *Oldham*, 2024 TN Wrk. Comp. App. Bd. LEXIS 8, at *14. We find no applicable rule or regulation mandating that a court set a hearing on a dispositive motion at any particular point in the course of litigation, and we decline to impose such an obligation on trial courts. Thus, for Employer to prevail on this issue, we would have to conclude the trial court's decision not to hear the motion for partial summary judgment prior to the trial date was an abuse of discretion, which would require a determination that the trial court "applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employ[ed] reasoning that causes an injustice to the complaining party." *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008). We conclude there was no such abuse of discretion here.

Summary judgment has long been described as "a substantial step forward to the end that litigation may be accelerated, insubstantial issues removed, and trial confined only to the genuine issues." *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 251 (Tenn. 2015) (internal citations omitted). In most circumstances, when a dispositive motion is filed well prior to trial, the better practice is to conduct a hearing on that motion in a timely manner after the other party is given a fair and reasonable opportunity to respond in accordance with Rule 56. In most cases, such a hearing should happen prior to trial. Further, in circumstances where the dispositive motion would only partially resolve the case, and the issue being presented is a pure question of law, a court's timely resolution of the motion could narrow the issues for trial, identify material facts that remain in dispute, and save time and expense for all parties. Such considerations are relevant to an appellate court's assessment of whether an abuse of discretion has occurred. Here, the parties had already concluded all expert proof, other than the live testimony of Mr. Galloway, prior to our remand of the case. As such, we conclude the trial court did not abuse its discretion in electing to hear counsel's arguments regarding this pure question of law on the morning of trial given the specific circumstances of this case. Thus, we find this first issue to be without merit.

*Claims for Additional Permanent Disability Benefits*

Employer next contends the trial court erred in determining Employee was eligible for permanent total disability benefits after the court had approved a settlement and entered a judgment for permanent partial disability benefits. Employer asserts two arguments in support of this position. First, it argues Employee is precluded from an award of permanent total disability because he was previously adjudicated to be permanently partially disabled; second, it asserts the express terms of the settlement agreement constituted a contract between the parties and limited Employee to permanent partial disability benefits.

7

The grant or denial of a motion for summary judgment is a matter of law that we review de novo with no presumption that the trial court's conclusions are correct. *See Rye*, 477 S.W.3d at 250. As such, we must "make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Id.* As the relevant facts underlying the present motion were undisputed, we need only address whether the trial court's ruling is supported by relevant statutory language and any applicable binding precedent. This, in turn, requires an in-depth examination of the history of the relevant statutes addressing permanent partial and permanent total disability benefits.[3]

*Recent History of Permanent Disability Statutes*

From 1992 to 2004, permanent partial disability benefits were addressed primarily in Tennessee Code Annotated sections 50-6-207 and 50-6-241. Prior to July 1, 2014, section 207 set forth a specific schedule of both temporary and permanent disability benefits that could be awarded for work-related injuries to various parts of the body. *See* Tenn. Code Ann. § 50-6-207(3)(A)(ii) (1992). An injury to a body part not listed in the schedule was considered to be an injury to the "body as a whole." Tenn. Code Ann. § 50-6-207(3)(F) (1992).

Beginning in 1992, with respect to injuries to the body as whole, if the injured employee returned to work for the same employer making the same or greater rate of pay as before the accident, the maximum amount the employee could be awarded was 2.5 times the medical impairment rating. Tenn. Code Ann. § 50-6-241(a)(1) (1992). If the employee did not return to work under such circumstances, a court had the discretion to award up to six times the medical impairment rating. Tenn. Code Ann. § 50-6-241(b) (1992). In either scenario, the court was to consider "lay and expert testimony, employee's age, education, skills and training, local job opportunities, and capacity to work at types of employment available in claimant's disabled condition" in order to assess the degree of the employee's "industrial disability." Tenn. Code Ann. § 50-6-241(a)(1) & (a)(2) (1992).

In addition, prior to 2004, if an injured employee was limited to 2.5 times the impairment rating but lost his or her job or had a reduction in pay within four hundred weeks of returning to work, that employee was eligible to file "a new cause of action" asking the court to "reconsider . . . the issue of industrial disability." Tenn. Code Ann.

---

[3] Employee contends Employer waived this defense because the dispute certification notice ("DCN") does not include it as a disputed issue. However, the DCN lists permanent disability benefits as a disputed issue. As we have said previously, a DCN must be considered in the context of the entire record. *Satterfield v. Smoky Mountain Home Health and Hospice*, No. 2019-03-1440, 2023 TN Wrk. Comp. App. Bd. LEXIS 52, at *12-13 (Tenn. Workers' Comp. App. Bd. Nov. 6, 2023). The initial DCN clearly indicated permanent disability benefits were at issue, and the September 2023 post-mediation DCN also included compensability as a disputed issue. Employer filed a partial summary judgment motion articulating this specific defense the following month. Thus, we conclude Employer did not waive this defense.

§ 50-6-241(a)(2) (1992).  In doing so, the court was instructed to examine all of the factors enumerated in subsection (a)(1) in deciding the appropriate award.

In a separate section, Tennessee Code Annotated section 50-6-242, pre-reform courts had the discretion to award up to 400 weeks of permanent disability benefits if the court found the employee met three out of four criteria on the date of maximum medical improvement:

(1)     The employee lacks a high school diploma or general equivalency diploma or the employee cannot read or write on a grade eight (8) level;

(2)     The employee is fifty-five (55) years of age or older;

(3)     The employee has no reasonably transferable job skills . . . ; and

(4)     The employee has no reasonable employment opportunities available locally considering the employee's permanent medical condition.

In addition, pre-reform law provided that when an injury "totally incapacitat[ed] the employee from working at an occupation that brings the employee an income," the court could award permanent total disability benefits "during the period of the permanent total disability until the employee, by age, [was] eligible for full benefits under the Old Age Insurance Program under the Social Security Act."  Tenn. Code Ann. § 50-6-207(4)(A) & (B) (1992).

The Workers' Compensation Law was later amended in several significant ways for all dates of injury after July 1, 2004.  Relevant to the calculation of permanent disability benefits, scheduled member injuries became subject to the same limitations as awards to the body as a whole, and the 2.5 times limitation applied in cases where the employee had returned to the pre-injury employer at an equal or greater rate of pay was reduced to 1.5 times the medical impairment rating.  Tenn. Code Ann. § 50-6-241(d)(1)(A) (2004).  The employee retained the "right to reconsideration" for both whole body and scheduled member injuries should he or she become no longer employed by the pre-injury employer, but the employee was not entitled to any further benefits if the job loss was due to misconduct, retirement, or a voluntary resignation unrelated to the work injury.  Tenn. Code Ann. § 50-6-241(d)(1)(B) (2004).  Both scheduled member and whole body injuries could result in awards up to the maximum number of weeks as allowed by the schedule if the court found three of the four factors listed in Tennessee Code Annotated section 50-6-242 as summarized above.

As noted by the trial court, pre-reform courts were called upon to address whether an employee seeking reconsideration of a prior award of industrial disability could seek

permanent total disability benefits.  In applying the statutory language as it existed at the time, courts concluded that employees seeking reconsideration of industrial disability *could* be awarded permanent total disability under certain circumstances.  In addition to *Caruthers*, *supra*, the Supreme Court's Special Workers' Compensation Appeals Panel affirmed an award of permanent total disability in the context of a reconsideration claim in *Princinsky v. Premier Manufacturing Support Services*, No. M2009-00207-WC-R3-WC, 2010 Tenn. LEXIS 877 (Tenn. Workers' Comp. Panel Sept. 23, 2010).  However, it is significant to note that, based on the law as it existed at the time these cases were decided, the Supreme Court concluded that the language of section 50-6-242 "applies to reconsideration actions brought pursuant to section 50-6-241(a)(2)."  *Id.* at *19 (citing *Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 631 (Tenn. 1999)).  The Court further acknowledged that if an employee proved three of the four factors listed in subsection 242(a) by clear and convincing evidence, then the trial court was not limited to the multipliers contained in subsection 241(b).  *Id.* at *20 (citing *Leab v. S & H Mining Co.*, 75 S.W.3d 344, 352 (Tenn. 2002)).  Consequently, the Court affirmed the trial court's determination that Ms. Princinsky was permanently totally disabled.  *Id.* at *21.  The language in sections 50-6-241(a)(2) and -242 relied on by the courts in *Caruthers* and *Princinsky* is no longer contained in the current Workers' Compensation Law.

*2013 Workers' Compensation Reform Act*

The 2013 Workers' Compensation Reform Act ("Reform Act") brought about fundamental changes to many of Tennessee workers' compensation statutes, including the calculation of permanent disability benefits.  First and foremost, Tennessee Code Annotated section 50-6-241 was rendered inapplicable to any dates of injury as of July 1, 2014.  Second, the schedule of injuries previously contained in section 50-6-207(3) was removed entirely, such that all work-related injuries are to be considered to the "whole body," and that section was amended significantly with respect to awards of permanent disability benefits.  It now provides in relevant part:

(3)     Permanent Partial Disability

(A)     In case[s] of disability partial in character *but adjudged to be permanent*, at the time the injured employee reaches maximum medical improvement[,] the injured employee shall be paid sixty-six and two-thirds percent (66 2/3%) of the employee's average weekly wages for the period of compensation, which shall be determined by multiplying the employee's impairment rating by four hundred fifty (450) weeks.  The award set out in this subdivision (3)(A) shall be referred to as the "original award."  The injured employee shall receive

10

these benefits . . . whether the employee has returned to work or not; and

(B)    If at the time the period of compensation provided by subdivision (3)(A) ends, . . . the employee has not returned to work with any employer or has returned to work and is receiving wages or a salary that is less than one hundred percent (100%) of the wages or salary the employee received from the employee's pre-injury employer on the date of the injury, the injured employee may file a claim for increased benefits. If appropriate, the injured employee's original award as determined under subdivision (3)(A) *shall be increased* by multiplying the original award by a factor of one and thirty-five one hundreds (1.35). The award set out in this subdivision (3)(B) shall be referred to as the "resulting award." In addition, the injured employee's resulting award *shall be further increased* by multiplying the resulting award by the product of the following factors, if applicable:

    (i)    Education: one and forty-five one hundredths (1.45), if the employee lacks a high school diploma or high school equivalency credential approved by the state board of education;

    (ii)    Age: one and two-tenths (1.2), if the employee was more than forty (40) years of age at the time the period of compensation ends . . . ; and

    (iii)    Unemployment rate: one and three tenths (1.3), if the unemployment rate, in the Tennessee county where the employee was employed by the employer on the date of the workers' compensation injury, was at least two (2) percentage points greater than the yearly average unemployment rate in Tennessee . . . .

(C)    In determining the employee's increased award pursuant to subdivision (3)(B), the employer shall be

> given credit for payment of the original award of benefits as determined under subdivision (3)(A) against the increased award.
>
> (D)  Any employee may file a claim for increased benefits under subsection (3)(B) by filing a new petition for benefit determination . . . with the bureau no more than one (1) year after the period of compensation provided in subsection (3)(A) ends . . . .

Tenn. Code Ann. § 50-6-207(3)(A) – (D) (2023) (emphases added).[4]  Thus, one impact of the Reform Act was to remove the discretion of a trial court to re-assess an employee's "industrial disability" in the event the employee was no longer employed as of a certain date and, instead, substitute a number of objective factors that could increase the employee's award of permanent disability benefits by pre-determined amounts.

The Reform Act also resulted in significant changes to Tennessee Code Annotated section 50-6-242, which now provides, in part:

> (a)(2)  [I]n extraordinary cases where the employee is eligible for increased benefits under § 50-6-207(3)(B), the employee may receive disability benefits of sixty-six and two-thirds percent (66 2/3%) of the employee's pre-injury average weekly wage or salary for a period not to exceed the two hundred seventy-five (275) weeks inclusive of the benefits provided to the employee under § 50-6-207(3)(A).  [These benefits may be awarded] in lieu of the increased benefits . . . under § 50-6-207(3)(B), if the presiding workers' compensation judge first determines based on clear and convincing evidence that limiting the employee's recovery to the benefits provided by § 50-6-207(3)(B) would be inequitable in light of the totality of the circumstances and the presiding workers' compensation judge makes specific, documented findings that as of the date of the award or settlement the three (3) following facts concerning the employee are true:
>
> (A)  The employee has been assigned an impairment rating of at least ten percent (10%) to the body as whole, that has been determined according to the AMA guides . . . by the authorized treating physician;

---

[4] The sentences in subdivision 3 defining the terms "original award" and "resulting award" were added by amendment in 2016.  Furthermore, the current statute allows an injured employee to file for increased benefits "at the time the period of compensation provided by subdivision (3)(A) ends, or one hundred eighty (180) days after the employee reaches maximum medical improvement, whichever is later."  Tenn. Code. Ann. § 50-6-207(3)(A) & (B) (2023).

12

(B)  The authorized treating physician has certified on a form provided by the bureau that due to the permanent restrictions on activity the employee has suffered as a result of the injury the employee no longer has the ability to perform the employee's pre-injury occupation. [This certification] shall have a presumption of correctness that may be overcome by the presentation of contrary clear and convincing evidence; and

(C)  The employee is not earning an average weekly wage or salary that is greater than or equal to seventy percent (70%) of the employee's pre-injury average weekly wage or salary.

Again, although the statute preserved some degree of discretion with respect to the amount a trial court could award for what has been called "extraordinary relief," that discretion is limited, and the statute does not expressly direct a court to "reassess industrial disability."

Of note, Tennessee Code Annotated section 50-6-207(4), the portion of the statute governing permanent total disability awards, was not amended by the Reform Act in any way pertinent to the issues raised in this case, with the exception of the calculation of attorneys' fees and certain procedural changes.[5]  Consequently, we must determine how the provisions of that section are to be construed and applied in light of the significant amendments to the remainder of section 207 and the Workers' Compensation Law as a whole.

*Principles of Statutory Construction*

The statutory provisions noted above, and the historical context in which those provisions have been amended, are critical to our analysis in addressing this issue of first impression.  Our Supreme Court has provided ample guidance for courts interpreting and reviewing statutes.  First, "we seek to 'ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope.'" *Falls v. Goins*, 673 S.W.3d 173, 180 (Tenn. 2023) (quoting *State v. Welch*, 595 S.W.3d 615, 621 (Tenn. 2020)).  "[T]he statutory language is of primary importance" in performing that task.  *Flade v. City of Shelbyville*, No. M2022-00554-SC-R11-CV, 2024 Tenn. LEXIS 395, at *22 (Oct. 9, 2024) (citing *State v. Dycus*, 456 S.W.3d 918, 924); *Mills v. Fulmarque, Inc.*, 360 S.W.3d 362, 368 (Tenn. 2012).  We must give the words contained in the statute

---

[5] As the maximum total benefit increased to 450 weeks under the Reform Act, the calculation of attorneys' fees in permanent total disability cases was amended to reflect this change.  The Reform Act also reorganized the language regarding the Social Security offset and changed the process for an employer requesting reevaluation of an award of permanent total disability, as it now requires the employer to file a new petition for benefit determination.

"their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose." *Coffee Cnty. Bd. of Educ. v. City of Tullahoma*, 574 S.W.3d 832, 839 (Tenn. 2019). When those words are clear and unambiguous, we derive the legislative intent from the plain meaning of the statutory language and simply enforce the statute as written. *State v. Deberry*, 651 S.W.3d 918, 925 (Tenn. 2022); *In re Bentley D.*, 537 S.W.3d 907, 911 (Tenn. 2017) (citing *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 895 (Tenn. 2011)). If, however, statutory language is ambiguous, we may consider other sources to discern the legislative intent. *In re Bentley D.*, 537 S.W.3d at 912 (quoting *Arden v. Kozawa*, 466 S.W.3d 758, 764 (Tenn. 2015)); *see also Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 527–28 (Tenn. 2010). Finally, we must "endeavor to construe statutes in a reasonable manner which avoids statutory conflict and provides for harmonious operation of the laws." *Wallace v. Metro. Gov't of Nashville & Davidson Cnty.*, 546 S.W.3d 47, 52–53 (Tenn. 2018) (quoting *Ray v. Madison Cnty.*, 536 S.W.3d 824, 831 (Tenn. 2017)).

In seeking to determine the General Assembly's intent as it relates to awards of permanent partial disability and permanent total disability, we have considered every section of the Workers' Compensation Law or other pertinent rules that could be relevant to the issue at hand, including: (1) claims for increased benefits under Tennessee Code Annotated section 50-6-207(3)(B); (2) claims for "extraordinary relief" under Tennessee Code Annotated section 50-6-242; (3) claims for modification of certain awards under Tennessee Code Annotated section 50-6-229(c); and (4) claims for relief from certain judgments under Rule 60.02 of the Tennessee Rules of Civil Procedure. We have also considered whether contract law is relevant to the rights and obligations of the parties following the approval of a settlement agreement and the entry of a judgment for the "original award" as defined in Tennessee Code Annotated section 50-6-207(3)(A).

*Claims for Increased Benefits*

Employee argues, and the trial court agreed, that Tennessee Code Annotated section 50-6-207(3)(B), contained in the section entitled "Permanent Partial Disability," does not expressly prohibit a court from awarding permanent total disability following the court's approval of an award of permanent partial disability benefits and the expiration of the initial compensation period. We conclude, however, that for this determination to be correct, we would have to find that the category of benefits the statute identifies as "permanent total disability" in section 207(4) is a type of "increased benefit" as defined by Tennessee Code Annotated section 50-6-207(3)(B). For the reasons noted below, we find no statutory or precedential support for this interpretation.

First, section 50-6-207(3), which defines "permanent partial disability," specifies that such benefits are awarded in cases where the disability is "partial in character but *adjudged* to be permanent." (Emphasis added.) As part of the settlement approval process, trial courts are tasked with determining whether a proposed settlement secures for the injured worker, "substantially, the benefits provided by this chapter." Tenn. Code Ann. §

14

50-6-240(a) (2023). In the alternative, with respect to disputed cases, the court may approve a settlement if it determines the settlement is "in the best interest of the employee." Tenn. Code Ann. § 50-6-240(e). Any settlement of permanent disability benefits is not "binding on either party" until approved by the court, and any settlement not so approved is "void." Tenn. Code Ann. § 50-6-240(a) & (f). Moreover, pursuant to Tennessee Code Annotated section 50-6-229(c), all payments of permanent disability benefits paid in a lump sum are statutorily deemed "final." Thus, we conclude that when a trial court signs an order approving a settlement of permanent disability benefits, that order constitutes a final judgment of the court, and such a judgment can only be amended or revised based on express statutory or regulatory authority.

Second, section 50-6-207(3)(B) defines a "resulting award" to be an original award that has been increased due to certain circumstances and factors. These "increased benefits" are wholly contained within the section of the law entitled "Permanent Partial Disability." The parameters of increased benefits are defined by objective criteria and pre-determined increases, with no discretion given to a trial court with respect to their application or the calculation of the increases. This differs significantly from the prior "right to reconsideration," as that portion of the statute gave discretion to the trial court to "reconsider industrial disability" of the injured employee by evaluating "lay and expert testimony, employee's age, education, skills and training, local job opportunities, and capacity to work at types of employment available in claimant's disabled condition." Tenn. Code Ann. § 50-6-241(a)(1) (1992). In short, we find nothing in section 50-6-207(3)(B) that authorizes a trial court to award permanent total disability benefits in the context of a claim for increased benefits.

Third, section 50-6-207(3)(D) contains a statute of limitations for the filing of claims for increased benefits. Specifically, the employee must file "a new petition for benefit determination . . . no more than one (1) year after the period of compensation provided in subsection (3)(A) ends or one (1) year after the one hundred eighty-day period after the employee reaches maximum medical improvement, whichever is later." Tenn. Code Ann. § 50-6-207(3)(D). Thus, the statutory scheme for an award of increased benefits is a separate cause of action with a different statute of limitations than that contained in Tennessee Code Annotated section 50-6-203(b). Yet, there is no similar language contained in section 50-6-207(4) that instructs an employee to file a new petition after the expiration of the original compensation period to seek an award of permanent total disability, and there are no provisions addressing any time period within which such a petition must be filed. Consequently, if permanent total disability benefits cannot be classified as a form of "increased benefits" under section 207(3)(B), then the statute of limitations contained in section 207(3)(D) would not apply to claims for permanent total disability benefits. If we were to accept the argument that an employee is not prohibited from seeking permanent total disability after having received an award of permanent partial disability benefits, one practical impact of this decision would be that there is no statute of

15

limitations applicable to post-judgment claims for permanent total disability. We find no evidence that the General Assembly intended such a result when it passed the Reform Act.

Finally, we note that subsection 207(3)(G) specifically limits permanent partial disability awards to no more than the "maximum total benefit." Thus, by the plain language of section 207(3), no claim for increased benefits can result in an award of permanent total disability because such an award cannot exceed the maximum total benefit as defined in section 50-6-102(13)(D).

In short, pre-reform law provided a trial court significant discretion in reassessing the industrial disability of the injured employee in the context of a claim for reconsideration. The 2013 Reform Act created a different compensation scheme altogether and removed most of this discretion. As we have explained previously, "[r]eliance on precedent from the Tennessee Supreme Court is appropriate unless it is evident the Supreme Court's decision or rationale relied on a remedial interpretation of pre-July 1, 2014 statutes, that it relied on specific statutory language no longer contained in the Workers' Compensation Law, and/or that it relied on an analysis that has since been addressed by the general assembly through statutory amendments." *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *13 n.4 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Here, due to the significant differences in statutory language pre-reform versus post-reform, we conclude pre-reform cases do not answer the question before us and provide no guidance to resolve the current dispute.

*Claims for Extraordinary Relief*

Next, current law provides an injured employee another opportunity for additional permanent disability benefits after the initial compensation period has ended. Under Tennessee Code Annotated section 50-6-242, a court can award up to 275 weeks of permanent disability benefits if the judge determines it would be "inequitable in light of the totality of the circumstances" to limit the award to the amounts mandated by Tennessee Code Annotated section 50-6-207(3)(B). *See Batey v. Deliver This, Inc.*, 568 S.W.3d 91 (Tenn. 2019) (discussing the criteria for awarding benefits pursuant to section 50-6-242). To qualify for such benefits, the employee must satisfy certain well-defined criteria. Notably, that section of the statute specifically states this relief is available in "extraordinary cases *where the employee is eligible for increased benefits under § 50-6-207(3)(B)*" and the benefits will be awarded "*in lieu of the increased benefits* for which the employee is eligible under § 50-6-207(3)(B)." Tenn. Code Ann. § 50-6-242(a)(2) (emphases added). Thus, section 242 specifically conditions an employee's ability to seek extraordinary relief on that employee's eligibility for increased benefits. Such claims are, therefore, subject to the same statute of limitations as is set out in section 207(3)(D). Again, we emphasize there is no similar language in section 50-6-207(4) addressing an employee's eligibility for permanent total disability in circumstances where the employee has already

16

been awarded permanent partial disability or establishing a statute of limitations for such claims.

Furthermore, both subsection 207(3)(D) and subsection 242(a)(2) provide a credit to an employer for the amount of the original award against any subsequent award of permanent partial disability. Section 207(4) contains no language regarding such a credit, which indicates that the General Assembly did not contemplate cases in which an employee would file a new petition seeking an award of permanent total disability *after* having been adjudged permanently partially disabled. If we were to accept Employee's argument, an employee could receive an award of permanent partial disability benefits, then file a new petition for permanent total disability benefits within some undetermined time in the future, and the employer would have no statutory basis to claim a credit for the permanent partial disability previously paid to the employee.

In sum, we can identify no mechanism in any section of the current Workers' Compensation Law that allows an employee to seek an award of permanent total disability benefits after being adjudicated permanently partially disabled, nor does the Law contain any limitations period within which an employee could seek such benefits after having received an award of permanent partial disability. For these reasons, we are constrained to conclude that the only logical reading of the statutes as a whole is that a claim for permanent total disability must be pursued within the context of the employee's original petition, or by amendment of that petition at any time prior to any adjudication of permanent partial disability. Further, we hold that the plain language of the various provisions of the Reform Act, when read as a whole, do not allow for a separate cause of action for permanent total disability benefits following an award of permanent partial disability, whether by settlement or judgment.[6]

*Settlement as a Contract*

Next, Employer argues that the settlement agreement itself prevented Employee from seeking permanent total benefits. In Employer's view, the settlement agreement must be treated as a contract between the parties, and that contract only allowed for two options for additional benefits following the court approval of the settlement: increased benefits available under subsection 50-6-207(3)(B) or extraordinary relief as provided under section 50-6-242. Given that Employee could not meet the objective criteria required for extraordinary relief, Employer asserts that Employee was contractually limited to seeking increased benefits only. In response, Employee argued that the settlement was not a contract as there was no "meeting of the minds" as to the extent of Employee's permanent

---

[6] We would be remiss if we did not note the anticipated impact of this holding on general settlement procedures for an "original award" as defined by Tennessee Code Annotated section 50-6-207(3)(A). However, as outlined above, we cannot ignore or look beyond the plain meaning of the language of the statute when it is unambiguous. To do otherwise would require us to expand the scope of the statute as written, which we have no authority to do.

disability when the initial settlement agreement was approved. In its compensation order, the trial court found the settlement agreement to be "silent" as to whether permanent total disability benefits were available to Employee at the end of his initial benefit period.

In workers' compensation cases, it is well-settled that "[a] settlement agreement is a contract between the parties to litigation, subject to the rules of contract interpretation, that, when it is incorporated into the judgment of the court, is also enforceable as a judgment." *Rivera v. Jeld-Wen, Inc.*, No. M2003-01651-WC-R3-CV, 2004 Tenn. LEXIS 666, at *12 (Tenn. Workers' Comp. Panel Aug. 25, 2004) (citing *Sweeten v. Trade Envelopes*, 938 S.W.2d 383, 385 (Tenn. 1996)). Here, the settlement documents do not specifically exclude Employee from seeking permanent total disability benefits after being adjudged permanently partially disabled, but neither is that remedy included in the list of possible post-judgment remedies available to Employee. In interpreting the language of a contract, we are required to consider "the usual, natural, and ordinary meaning of" the contract provisions. *Staubach Retail Servs.-Southeast, LLC v. H. G. Hill Realty Co.*, 160 S.W.3d 521, 526 (Tenn. 2005). Here, the contract was specific as to the types of additional benefits Employee could seek post-judgment, and that list did not include permanent total disability benefits as being a potential post-judgment remedy. In the absence of any indication in the contract language that a post-judgment claim for permanent total disability benefits was specifically reserved in the agreement, we conclude Employee did not preserve any such right, even if the statutes allowed it.

*Modification of Judgments*

One other possible statutory mechanism by which an employee could seek additional benefits after being adjudged permanently partially disabled is contained in Tennessee Code Annotated section 50-6-229(c).[7] That section states:

> All amounts paid by the employer and received by the employee or the employee's dependents, by lump sum payments, shall be final, but the amount of any award payable periodically for more than twenty-six (26) weeks *may be modified* as follows:
>
> (1) At any time by agreement of the parties and approval of the court; or
>
> (2) If the parties do not agree, then at any time after twenty-six (26) weeks from the date of the award, either party may file an application to the court of workers' compensation claims, on

---

[7] Although this issue was not raised by either party in this appeal, in the interests of judicial economy, we have chosen to address it because of its significance to our broader discussion of claims for additional disability benefits.

18

the ground[s] of increase or decrease of incapacity due solely
to injury.

Tenn. Code Ann. § 50-6-229(c) (2024) (emphasis added). Prior to the passage of the 2013 Reform Act, this language was found almost verbatim in Tennessee Code Annotated section 50-6-231, with the exception that the parties were directed to seek modification of a periodic award of permanent disability benefits in courts of competent jurisdiction, generally, as the Court of Workers' Compensation Claims had not yet been created.

It is clear from both the plain language of this statute and the pertinent case law that this avenue of modification exists *only* if the award of permanent disability benefits is payable periodically for a period of more than twenty-six weeks. *See, e.g.*, *Nails v. Aetna Ins. Co.,* 834 S.W.2d 289, 293 (Tenn. 1992); *Corby v. Matthews*, 541 S.W.2d 789, 793 (Tenn. 1976) (stating both the employer and the employee take risks when they enter into a lump sum settlement because of the finality of lump sum payments). Given that there is no evidence in the present case that the original award was payable periodically for more than twenty-six weeks, we decline to address whether the modification of an award of periodic benefits under Tennessee Code Annotated section 50-6-229 can result in a finding of permanent total disability based on evidence of an increase in incapacity.

*Relief from Judgments or Orders*

It is well-settled that the Court of Workers' Compensation Claims is bound by the Tennessee Rules of Civil Procedure except in limited circumstances. *See* Tenn. Code Ann. § 50-6-239(c)(1). Thus, in any workers' compensation case in which a settlement has been approved, an employee could seek relief from the operation of the court's order approving the settlement of the "original award" as provided in Rule 60 of the Tennessee Rules of Civil Procedure. No such remedy has been sought in this case. We would also caution that "while Rule 60 grounds may be used to set aside final workers' compensation judgments in narrow circumstances . . . [w]orkers' compensation cases involving lump-sum awards [are] weighted in favor of finality." *Underwood v. Zurich Ins. Co.*, 854 S.W.2d 94, 98 (Tenn. 1993). A request to set aside a settlement in the circumstances as are presented here must show "overriding importance, [] extraordinary circumstances[,] or extreme hardship within the meaning of Rule 60.02(5)." *Id.* at 99. No such showing has been made in the present case.

*Employee's Entitlement to a Resulting Award*

Finally, Employer contends Employee cannot receive any increased benefits because the primary cause of his current condition and the nonunion of his fracture is his smoking. As such, Employer argues the nonunion of the fracture was not a "direct and natural consequence" of the injury. However, we conclude Employer has misconstrued the direct and natural consequences rule. As the Workers' Compensation Appeals Panel

explained recently in *Hudgins v. Global Personnel Solutions, Inc.*, No. E2023-00792-SC-R3-WC, 2024 Tenn. LEXIS 86 (Tenn. Workers' Comp. Panel Mar. 5, 2024), to apply this rule, the preponderance of the evidence must support a finding that "the employment contributed more than fifty percent in causing an injury *subsequent to* a compensable injury for it to also be compensable." *Id.* at \*14 (emphasis added). Here, there was no "injury subsequent to a compensable injury." Instead, Employer argues that Employee's difficult recovery and poor result were caused by his continued smoking and constituted a "subsequent injury" to which the direct and natural consequences rule can apply. We find no support in relevant case law for such an interpretation of the rule. We interpret Employer's argument to suggest that Employee's continued smoking after the work accident constituted an independent, intervening cause that broke the chain of causation and, therefore, his smoking was the primary cause of the nonunion of Employee's fracture. However, we conclude the preponderance of the evidence fails to support such a finding. Although Dr. Smith agreed that Employee's smoking was a factor in the nonunion, there is no evidence in this record to suggest that his smoking was the primary cause of the nonunion. In fact, during his deposition, Dr. Smith specifically agreed that the nonunion was "a natural medical consequence of the October 6, 2020 injury." During re-direct, when Dr. Smith was asked whether Employee's smoking was "the primary factor for that lack of blood supply," he responded, "had to be a significant factor I will say." He did not state, however, that the Employee's nonunion was primarily caused by his continued smoking.

Employer asserted during oral argument that the initial settlement documents only resolved a claim for a "right displaced femoral fracture" and that, as such, it never accepted the nonunion of that fracture as a compensable condition. However, the settlement amount, as reflected in the agreement signed by both parties, was based on an 8% impairment rating assigned by the authorized treating physician, who took into account the nonunion of the fracture and Employee's continued atrophy, pain, and distal foot numbness when assessing the degree of permanent medical impairment. Thus, Employer's argument that Employee's increased benefit and resulting award should not be based on that same 8% rating is meritless.

Employee was fifty-six years old at the time of the injury and is a high school graduate. We take judicial notice that the unemployment rate in Knox County, which was Employee's county of employment at the time of the accident, was 6.0% in October 2020, and the state unemployment rate that year was 7.5%; thus, the unemployment rate factor did not apply.[8] Therefore, as of the date of trial, Employee qualified for a factor of 1.35 based on his employment status and a factor of 1.2 based on his age. Pursuant to Tennessee Code Annotated section 50-6-207(3)(B), we therefore modify the award of permanent

---

[8] *See* Tennessee Department of Labor and Workforce Development Labor Force Estimates, November 25, 2020, tn.gov/content/dam/tn/workforce/documents/LaborEstimates/LaborForceEstimatesOct20.pdf (last visited Oct. 30, 2024); and *see* Tennessee Department of Labor and Workforce Development Labor Force & Nonfarm Employment Estimates 2016-2020, May 2021, tn.gov/content/dam/tn/workforce/documents/majorpublications/reports/Annual_Avg_Pub_2020.pdf (last visited Oct. 30, 2024).

partial disability benefits to an amount based on 12.96%, or 58.32 weeks. At his workers' compensation rate of $603.29, this equates to a resulting award of $35,183.87. After deducting Employer's credit of $18,874.17 for payment of the original award, the trial court's award is modified to a resulting award of $16,309.70. We further modify the trial court's award of attorneys' fees to twenty percent of the resulting award, or $3,261.94, and reduce the discretionary costs awarded to $444.50, or the amount spent by Employee's counsel in pursuit of increased benefits.[9] All other awards as set forth in the trial court's Compensation Order, including future medical benefits and court costs, are affirmed.

*Frivolous Appeal*

For his part, Employee seeks attorneys' fees and costs for what he asserts was a frivolous appeal. Employee argued that Employer "seeks review of a previously appealed and properly adjudicated argument . . . [and] seeks review of an argument that is an [unpleaded] affirmative defense." It is well-settled that "[a] frivolous appeal is one that . . . had no reasonable chance of succeeding," *Adkins v. Studsvik, Inc.*, No. E2014-00444-SC-R3-WC, 2015 Tenn. LEXIS 588, at *30 (Tenn. Workers' Comp. Panel July 21, 2015), or one that is devoid of merit or brought solely for delay, *Yarbrough v. Protective Servs. Co., Inc.*, No. 2015-08-0574, 2016 TN Wrk. Comp. App. Bd. LEXIS 3, at *11 (Tenn. Workers' Comp. App. Bd. Jan. 25, 2016). "[P]arties should not be required to endure the hassle and expense of baseless litigation. Nor should appellate courts be required to waste time and resources on appeals that have no realistic chance of success." *Id.* at *10-11 (internal citations omitted); *see also Burnette v. WestRock*, No. 2016-01-0670, 2017 TN Wrk. Comp. App. Bd. LEXIS 66, at *18 (Tenn. Workers' Comp. App. Bd. Oct. 31, 2017). In the present case, given that Employer's statutory interpretation arguments raised issues of first impression, and we ultimately reversed the trial court on certain issues, we conclude Employer's appeal was not frivolous.

**Conclusion**

For the foregoing reasons, we affirm the court's decision addressing the setting of a hearing on Employer's motion for partial summary judgment under the particular circumstances of this case; we reverse the trial court's determination that employees who are adjudged permanently partially disabled can later seek permanent total disability benefits; we modify the trial court's award of permanent disability benefits, attorneys' fees, and discretionary costs; we affirm the trial court's order in all other respects; and we certify the modified order as final for purposes of further appeal. Costs on appeal are taxed to Employer.

---

[9] Employee sought and the trial court awarded discretionary costs of $4,921.35, which was an erroneous tabulation of the discretionary expenses as presented. The total cost evidenced by the invoices attached to the motion for discretionary costs was $4,782.30, which included Dr. Kennedy's deposition fee and the cost of that transcription, as well as the cost of the court appearance by Mr. Galloway. Those expenses were incurred in the pursuit of permanent total disability benefits, which we have concluded could not succeed.



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| John F. Oldham | ) | Docket No. 2022-03-0420 |
| | ) | |
| v. | ) | State File No. 66575-2020 |
| | ) | |
| Freeman Webb Company Realtors | ) | |
| d/b/a Sunnybrook, et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | Heard October 1, 2024 |
| Compensation Claims | ) | in Knoxville, TN |
| Pamela B. Johnson, Judge | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 8th day of November, 2024.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Sent to: |
|---|---|---|---|---|---|
| A. Allen Grant<br>Ben Norris | | | | X | agrant@eraclides.com<br>bnorris@eraclides.com |
| Andrew Roberto | | | | X | aroberto@brownandroberto.com<br>bseay@brownandroberto.com |
| Pamela B. Johnson, Judge | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | X | penny.patterson-shrum@tn.gov |

Olivia Yearwood
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: WCAppeals.Clerk@tn.gov